BRIAN WILKERSON, Plaintiff
v.
DUKE UNIVERSITY and CHRISTOPHER DAY, Defendants

No. COA13-181

Filed 17 September 2013

1. **False Imprisonment—law enforcement officer—genuine issue of fact—restraint—lawful conduct**

   Summary judgment for defendant Day on a false imprisonment claim was reversed in an action arising from an incident between Day, a Duke University police officer, and plaintiff, a parking valet at Duke University Hospital. There were genuine issues of material fact as to whether plaintiff was restrained and whether the restraint was lawful.

2. **Assault—genuine issues of fact—reasonable apprehension of injury—harmful contact**

   Summary judgment for defendant Day on an assault and battery claim was reversed in an action arising from an incident between Day, a Duke University police officer, and plaintiff, a parking valet at Duke University Hospital. There were genuine issues of material fact as to whether plaintiff was in reasonable apprehension of injury by Day and whether there was harmful or official contact.

3. **Emotional Distress—summary judgment—evidence of severe distress—not sufficient**

   The trial court properly granted summary judgment for defendant Day on claims for intentional and negligent infliction of emotional distress arising from an incident between Day, a Duke University police officer, and plaintiff, a parking valet at Duke University Hospital. There was not a sufficient forecast of evidence showing that plaintiff suffered from severe emotional distress.

**WILKERSON v. DUKE UNIV.**

[229 N.C. App. 670 (2013)]

**4. Constitutional Law—state claims—adequate remedy**

The trial court properly granted summary judgment for defendant Day on state constitutional claims from an incident between Day, a Duke University police officer, and plaintiff, a parking valet at Duke University Hospital. Plaintiff's state constitutional claims were based upon the same alleged conduct as his state law claims and state law provides an adequate remedy.

**5. Employer and Employee—respondeat superior—underlying claims**

Claims against Duke University based upon *respondeat superior* and arising from an incident between a Duke University police officer and a Duke Hospital parking valet were properly dismissed by summary judgment where there were no genuine issues of material fact in the underlying claims by the valet against the officer, and were reversed where there were genuine issues of fact in the underlying claims.

**6. Employer and Employee—negligent supervision and retention—competency of police officer—knowledge of employer**

Claims against Duke University based upon negligent supervision and retention and arising from an incident between a Duke University police officer and a Duke Hospital parking valet should not have been dismissed by summary judgment where there were genuine issues of material fact as to whether the officer was competent and whether his supervisors knew or had reason to know of his incompetency.

**7. Appeal and Error—preservation of issues—argument required**

Plaintiffs abandoned contentions on appeal by making no argument.

**8. Pleadings—motion to amend—denial—no abuse of discretion**

The trial court did not abuse its discretion by denying plaintiffs motion to amend his complaint where he had delivered the motion to defendants thirteen months after he filed the initial complaint and five days before the summary judgment hearing. Moreover, the court properly denied the motion based upon the futility of the amendments.

Appeal by plaintiff from orders entered 17 September 2012 by Judge Orlando F. Hudson, Jr., in Durham County Superior Court. Heard in the Court of Appeals 13 August 2013.

*Ekstrand & Ekstrand LLP, by Robert C. Ekstrand, for plaintiff-appellant.*

*Ellis & Winters LLP, by Leslie C. Packer and Ashley K. Brathwaite, for defendant-appellees.*

STEELMAN, Judge.

Where there were issues of material fact with respect to plaintiff's claims for false imprisonment, assault, battery, and negligent supervision and retention, the portion of the trial court's order granting summary judgment to defendants as to those claims is reversed. Where there was no evidence of severe emotional distress, the trial court's dismissal of plaintiff's claims for intentional infliction of emotional distress and negligent infliction of emotional distress is affirmed. Where plaintiff has an adequate remedy in state law, the trial court properly granted summary judgment in favor of defendants with respect to plaintiff's state constitutional claims. Where plaintiff filed a motion to amend his complaint thirteen months after he filed his initial complaint and five days before the hearing on summary judgment, we cannot say the trial court abused its discretion in denying plaintiff's motion to amend.

## I. Factual and Procedural Background

On 15 July 2008, Brian Wilkerson (plaintiff) was working as an attendant at a valet parking area at Duke University Hospital. The valet parking area contained a gated lot. Plaintiff had been instructed to allow Duke University Police officers entry into the gated lot in the event of an emergency, but that in non-emergency situations, to inform police officers that they should park vehicles along a traffic circle, outside of the lot. On 15 July 2008, Duke University Police Officer Christopher Day (Day) came to the Hospital to assist in unlocking a car parked in the gated lot. Plaintiff refused to open the gate to the lot, resulting in a physical confrontation with Day. Day issued a notice of trespass to plaintiff, which forbade him to go upon any Duke University property. This resulted in plaintiff losing his job as a parking attendant.

Plaintiff filed a verified complaint in this action on 20 July 2011 against Day and Duke University. The complaint asserted the following claims: false imprisonment, assault, battery, public stigmatization, negligence, negligent supervision and retention, negligent infliction of emotional distress, intentional infliction of emotional distress, and violations of the North Carolina Constitution. Plaintiff sought compensatory

and punitive damages. Defendants filed an answer and a motion to dismiss all of plaintiff's claims pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure. On 18 May 2012, defendants filed a motion for summary judgment and the matter came on for hearing at the 10 September 2012 Civil Session of Durham County Superior Court. On 5 September 2012, plaintiff filed a motion to amend his complaint to assert additional claims for tortious interference with contract, tortious interference with prospective contract, and unfair and deceptive trade practices. In ruling on defendants' motion for summary judgment, the trial court considered written discovery, depositions, and the pleadings. The trial court denied plaintiff's motion to amend and subsequently granted defendants' motion for summary judgment dismissing all of plaintiff's claims. The order did not specify whether the dismissal was with or without prejudice.

Plaintiff appeals.

## II. Entry of Summary Judgment

In his first argument, plaintiff contends that the trial court erred in granting summary judgment in favor of defendants. We agree in part. We address each of plaintiff's claims, first discussing his claims against Day and then addressing his claims against Duke University.

## A. Standard of Review

"Our standard of review of an appeal from summary judgment is de novo; such judgment is appropriate only when the record shows that 'there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.' " *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (quoting *Forbis v. Neal*, 361 N.C. 519, 523-24, 649 S.E.2d 382, 385 (2007)). We view the evidence in the light most favorable to the non-movant, and any question resolving the credibility of the witnesses is for the jury to decide. *Clark v. Brown*, 99 N.C. App. 255, 259-60, 393 S.E.2d 134, 136 (1990).

## B. Claims Against Day

Plaintiff's claims against Day are based upon Day's conduct during the physical confrontation with plaintiff. Plaintiff's testimony, contained in his deposition, sets forth the following version of events:

> I was coming back to the booth and that's when he pointed at my face and asked me for my information, and then that's when I asked him nicely to not point at my face. He kept doing it, so I went back to work. Then that's when

> he pulled me and tried to grab me and then I got his arm
> off of me and then he grabbed me with his other arm on
> the other arm. Then I got that one off of me, and then he
> went to grab me with both arms and then I got both of his
> arms off me. He dropped everything in his packers [sic],
> and that's when he stopped and just waited for my manag-
> ers to come.

Day's testimony from his deposition supports a different version:

> I put my hand on [plaintiff's] chest and-- and stopped him
> from going around me and told him, again, that I needed
> his ID. . . . [Plaintiff] basically kept saying, "There it is.
> There it is," but [plaintiff] and I basically locked arms, and
> he kept trying to go around me, and he told me to get my
> hands off of him. And at that point, his hands somehow
> grasped hold of, I guess, my pockets, and what I had in my
> pockets . . . came flying out and went all over the ground.

We now address each of plaintiff's claims against Day below.

### 1. False Imprisonment

**[1]** False imprisonment is the restraint of a person where the restraint is both unlawful and involuntary. *Black v. Clark's Greensboro, Inc.*, 263 N.C. 226, 228, 139 S.E.2d 199, 201 (1964). The elements of false imprisonment include: "(1) the illegal restraint of plaintiff by defendant, (2) by force or implied threat of force, and (3) against the plaintiff's will." *Rousselo v. Starling*, 128 N.C. App. 439, 449, 495 S.E.2d 725, 732 (1998). "The restraint requirement of this action requires no appreciable period of time, simply sufficient time for one to recognize his illegal restraint. The tort is complete with even a brief restraint of the plaintiff's free-dom." *West v. King's Dep't Store, Inc.*, 321 N.C. 698, 703, 365 S.E.2d 621, 624 (1988).

In the instant case, plaintiff's verified complaint alleges: "Day was detaining [plaintiff] with hands, physically detaining and controlling [plaintiff's person] and completely restricting [plaintiff's] freedom of movement. [Plaintiff] freed himself of [Day's] grip, and in the process, a notebook and coins fell from Day's shirt pocket." We treat the veri-fied complaint as an affidavit. *See Page v. Sloan*, 281 N.C. 697, 705, 190 S.E.2d 189, 194 (1972) ("A verified complaint may be treated as an affi-davit if it (1) is made on personal knowledge, (2) sets forth such facts as would be admissible in evidence, and (3) shows affirmatively that the affiant is competent to testify to the matters stated therein."). Plaintiff's

testimony from his deposition also asserts this version of events. In their brief, defendants assert that any restraint of plaintiff was lawful because Day was conducting an investigatory stop. Defendants, however, do not point to any conclusive facts in the record that demonstrate Day had "reasonable suspicion, based on objective facts, that [plaintiff was] involved in criminal activity." *See State v. Jones*, 304 N.C. 323, 328, 283 S.E.2d 483, 486 (1981) (citation omitted) (describing the reasonable suspicion required to conduct an investigatory stop). We hold that there are genuine issues of material fact as to whether plaintiff was restrained and if so, whether that restraint was unlawful. The portion of the trial court's order granting summary judgment in favor of Day with respect to plaintiff's claim for false imprisonment is reversed.

### 2. Assault and Battery

[2] "The elements of assault are intent, offer of injury, reasonable apprehension, apparent ability, and imminent threat of injury." *Hawkins v. Hawkins*, 101 N.C. App. 529, 533, 400 S.E.2d 472, 475 (1991) *aff'd*, 331 N.C. 743, 417 S.E.2d 447 (1992). "A battery is made out when the person of the plaintiff is offensively touched against his will[.]" *Ormond v. Crampton*, 16 N.C. App. 88, 94, 191 S.E.2d 405, 410 (1972).

Based upon plaintiff's deposition testimony and Day's deposition testimony, there exist genuine issues of material fact as to whether plaintiff was in reasonable apprehension of injury by Day and whether there was a harmful or offensive contact. The portion of the trial court's order granting summary judgment in favor of Day with respect to plaintiff's claims of assault and battery is reversed.

### 3. Intentional Infliction of Emotional Distress and Negligent Infliction of Emotional Distress

[3] The elements of a claim for intentional infliction of emotional distress are "(1) extreme and outrageous conduct, (2) which is intended to cause and does cause (3) severe emotional distress . . . . " *Dickens v. Puryear*, 302 N.C. 437, 452, 276 S.E.2d 325, 335 (2007). The elements of a claim for negligent infliction of emotional distress are: "(1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress (often referred to as 'mental anguish'), and (3) the conduct did in fact cause the plaintiff severe emotional distress." *Johnson v. Ruark Obstetrics & Gynecology Assocs., P.A.*, 327 N.C. 283, 304, 395 S.E.2d 85, 97 (1990). Severe emotional distress has been defined as "any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional

or mental condition which may be generally recognized and diagnosed by professionals trained to do so." *Id.*; *Holloway v. Wachovia Bank & Trust Co., N.A.*, 339 N.C. 338, 354, 452 S.E.2d 233, 243 (1994). ("[T]he severe emotional distress required for [intentional infliction of emotional distress] is the same as that required for negligent infliction of emotional distress[.]").

In his deposition, when asked about the negative effect on his emotional health, plaintiff testified that "I can get arrested if I go see the people that I was putting smiles on their faces." He acknowledged that he has not been treated by a counselor, therapist, or doctor for any condition arising out of this incident and that he has not been diagnosed with any kind of mental health problems, including depression or anxiety. There was not a sufficient forecast of evidence showing that plaintiff suffered from severe emotional distress. The trial court properly granted summary judgment in favor of Day with respect to plaintiff's claims of intentional infliction of emotional distress and negligent infliction of emotional distress.

### 4. Violations of the North Carolina Constitution

**[4]** "[I]n the absence of an adequate state remedy, one whose state constitutional rights have been abridged has a direct claim . . . under our Constitution." *Corum v. Univ. of N.C.*, 330 N.C. 761, 782, 413 S.E.2d 276, 289 (1992). However, when an adequate remedy in state law exists, constitutional claims must be dismissed. *Wilcox v. City of Asheville*, __ N.C. App. __, __, 730 S.E.2d 226, 236 (2012). In order for a remedy to be adequate, "a plaintiff must have at least the opportunity to enter the courthouse doors and present his claim" and "the possibility of relief under the circumstances." *Craig v. New Hanover Cnty. Bd. of Educ.*, 363 N.C. 334, 339-40, 678 S.E.2d 351, 355 (2009).

In the instant case, plaintiff's state constitutional claims are based upon the same alleged conduct that underlies his state law claims. Because state law gives plaintiff the opportunity to present his claims and provides "the possibility of relief under the circumstances," plaintiff's state constitutional claims must fail. The trial court properly granted summary judgment in favor of Day with respect to plaintiff's claims for constitutional violations.

### C. Claims Against Duke University

Plaintiff's claims against Duke University are based upon two theories: respondeat superior and negligent supervision.

### 1. Respondeat Superior

**[5]** "The doctrine of *respondeat superior* generally allows an employer (sometimes referred to as a 'principal' in this context) to be held vicariously liable for tortious acts committed by an employee (sometimes referred to as an 'agent' in this context) acting within the scope of his employment." *Creel v. N.C. Dep't of Health & Human Servs.*, 152 N.C. App. 200, 203, 566 S.E.2d 832, 834 (2002).

In the instant case, the employee-employer relationship between Day and Duke University is undisputed. Duke University employed Day as a police officer in its Duke University Police Department. Day testified in his deposition that he was on duty during the time of the incident and was assisting another Duke University police officer in a "vehicle unlock." When Day was denied access to the gated lot where the vehicle was located, he attempted to obtain plaintiff's name and supervisor.

This theory of recovery is based upon Day's alleged conduct, and thus summary judgment was properly granted in favor of Duke University with respect to plaintiff's negligent infliction of emotional distress, intentional infliction of emotional distress, and state constitutional claims for the reasons already discussed. As to plaintiff's claims of false imprisonment, assault, and battery, there exist genuine issues of material fact as to whether Day's actions constituted tortious behavior. The trial court's entry of summary judgment in favor of Duke University as to these three claims is also reversed.

**[6]**       ### 2. Negligent Supervision and Retention

> To support a claim of negligent retention and supervision against an employer, the plaintiff must prove that the incompetent employee committed a tortious act resulting in injury to plaintiff and that prior to the act, the employer knew or had reason to know of the employee's incompetency.

*Smith v. Privette*, 128 N.C. App. 490, 494-95, 495 S.E.2d 395, 398 (1998) (citation omitted). Plaintiff must therefore show sufficient evidence of Day's tortious act that resulted in injury to plaintiff and that Day's supervisors knew or had reason to know of his incompetency.

In the instant case, plaintiff contends that a reference to Day's nickname, "Hank," in his job performance evaluation indicates that Day's supervisors were aware of Day's tendency to "exhibit[] patterns of

uncontrolled rage." Plaintiff refers us to a performance evaluation from 1 May 2006 to 30 April 2007, that stated:

> I would like for PO Day to try and keep 'Hank' under control. At times, PO Day can seem disrespectful when he vents his frustration. He needs to keep his personal opinions more closely to himself and not speak of them in an open forum. Some officers think that he comes off as a disgruntled employee who complains a lot. He needs to take those concerns and discuss them privately and through proper channels.

In his deposition, Day testified that his supervisor was referring to his tendency to publicly voice concerns about the department:

> It's -- when he's saying when I talk to him or I voice concerns about the Department. . . . To do more – to do it more in a one-on-one setting rather than in -- in briefing is what he was saying. . . . [H]e was just trying to say there's an appropriate time and place to voice concerns.

A more recent performance evaluation from 1 May 2007 to 30 April 2008 concluded:

> Officer Day is professional and courteous during interactions with the public and with other members of this department. He treats people fairly and with dignity. He does not abuse his authority as a law enforcement officer. He tends to let his personal problems distract him from completely focusing on his job. He is outspoken and is trying to be less vocal in voicing complaints and concerns.

While Day received positive feedback about his interactions with the public in the year immediately prior to the altercation with plaintiff, his evaluations also indicated that his supervisors were aware of inappropriate conduct: he was distracted from work by personal problems, he was outspoken, he was disrespectful at times, and he vented his frustration. It is unclear whether their awareness of Day's behavior related solely to his tendency to complain publicly within the department or whether it also related to his conduct during interactions with the public. Genuine issues of material fact exist as to whether Day was incompetent and whether his supervisors knew or had reason to know of his incompetency. The portion of the trial court's order granting summary judgment in favor of Duke on this claim is reversed.

### D. Claims Abandoned on Appeal

**[7]** Plaintiff makes no argument on appeal that the trial court erred in granting summary judgment in favor of defendants with regards to his claims of public stigmatization and negligence. These arguments are deemed abandoned. N.C.R. App. P. 28(b)(6).

### III. Denial of Motion to Amend Complaint

**[8]** In his second argument, plaintiff contends that the trial court erred in denying his motion to amend his complaint. We disagree.

### A. Standard of Review

"A motion to amend is addressed to the discretion of the court, and its decision thereon is not subject to review except in case of manifest abuse." *Calloway v. Ford Motor Co.*, 281 N.C. 496, 501, 189 S.E.2d 484, 488 (1972).

### B. Analysis

Once a responsive pleading has been filed, a party may amend their complaint "only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." N.C. Gen. Stat. § 1A-1, Rule 15 (2011). "Reasons justifying denial of an amendment are (a) undue delay, (b) bad faith, (c) undue prejudice, (d) futility of amendment, and (e) repeated failure to cure defects by previous amendments." *Martin v. Hare*, 78 N.C. App. 358, 361, 337 S.E.2d 632, 634 (1985). "In deciding if there was undue delay, the trial court may consider the relative timing of the proposed amendment in relation to the progress of the lawsuit." *Draughon v. Harnett Cnty. Bd. of Educ.*, 166 N.C. App. 464, 467, 602 S.E.2d 721, 724 (2004)

In the instant case, the trial court denied plaintiff's motion to amend his complaint "on the basis of undue delay and undue prejudice[.]"Plaintiff filed the complaint in this action on 20 July 2011. Defendants filed their answer on 19 August 2011, and their motion for summary judgment on 18 May 2012. Plaintiff hand-delivered the motion to amend his complaint to defendants on 5 September 2012, thirteen months after he filed the initial complaint and only five days before the hearing on defendants' motion for summary judgment. We cannot say the trial court abused its discretion in denying plaintiff's motion to amend for undue delay and undue prejudice.

We note that plaintiff's amended complaint asserted three additional claims: tortious interference with contract, tortious interference with

prospective contract, and unfair or deceptive trade practices. There is no evidence in the record that Day induced plaintiff's employer not to perform a contract with plaintiff, or that Day induced a third party to refrain from entering a contract with plaintiff without justification. *See Gupton v. Son-Lan Dev. Co., Inc.*, 205 N.C. App. 133, 142-43, 695 S.E.2d 763, 770 (2010) (describing a claims for tortious interference with contract and tortious interference with prospective contract). There is also no evidence in the record to support the claim for unfair or deceptive trade practices. *See Gray v. N.C. Ins. Underwriting Ass'n*, 352 N.C. 61, 68, 529 S.E.2d 676, 681 (2000) ("In order to establish a violation of N.C.G.S. § 75-1.1, a plaintiff must show: (1) an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) which proximately caused injury to plaintiffs."). The trial court properly denied the motion to amend the complaint based upon the futility of these amendments as well.

This argument is without merit.

### IV. Conclusion

We reverse the portion of the trial court's order granting summary judgment in favor of defendants with respect to plaintiff's claims for false imprisonment, assault, battery, and negligent supervision and retention. We affirm all other portions of the summary judgment order. We also affirm the trial court's order denying plaintiff's motion to amend his complaint.

REVERSED IN PART, AFFIRMED IN PART.

Judges McGEE and ERVIN concur.