ELMORE, Judge.
 

 *330
 
 Kenneth Adams (plaintiff) was arrested for violating the City of Raleigh's Amplified Entertainment Permit (AEP) Ordinance. After the charge was dropped, plaintiff sued the City of Raleigh (defendant). Plaintiff appeals from the trial court's order granting defendant's motion for summary judgment. After careful consideration, we affirm.
 

 I. Background
 

 In August 2011, plaintiff and his fiancée, LaToya Turner, rented commercial space on Capital Boulevard in Raleigh "for the express purpose of opening a teen club to provide at-risk youth a non-violent and drug-free place to socialize." Plaintiff and Turner formed a limited liability
 
 *331
 
 company named, "Juice Bar Teen-Lounge" (Juice Bar). On 15 August 2011, plaintiff obtained a City of Raleigh business license for Juice Bar. The following day, Turner submitted an application to defendant for an AEP. On the application, Turner listed herself as a partner, plaintiff as the owner, the type of business as "event center," and the business start date as 15 August 2011. The application instruction sheet lists telephone numbers for Building Inspections and Fire Prevention, and states, "The applicant for an Amplified Entertainment Permit is responsible for scheduling the required inspections." It further states, "Please allow at least 90 days from your application date until you plan to begin providing Amplified Entertainment." Turner paid the $250 non-refundable application fee but did not pay the additional $250 permit fee.
 

 Also on 16 August 2011, Turner contacted David Hickman, who at that time was the Code Enforcement Specialist, to conduct a courtesy inspection of Juice Bar. In Hickman's affidavit, he stated that the City Inspections Department offered courtesy inspections "as a public service" that were "not intended to be comprehensive, but were intended to identify obvious and serious issues." Hickman stated that after the courtesy inspection, he discussed with Turner the limited occupant load and the required music shut-off switch, and he recommended that plaintiff and Turner proceed with applying for their AEP in order to initiate the formal inspection process. Hickman clarified that a business may open "upon purchase of a business license, and mere purchase of a business license does not in itself trigger any inspection requirements. However, if a business wishes to provide amplified entertainment, it must first obtain an AEP." Hickman stated that neither plaintiff nor Turner requested an AEP inspection. Plaintiff answered as follows in an interrogatory: "On or about August 15, 2011, J.W. Pinder, the deputy fire marshal, told me that fire extinguishers needed to be placed on the walls in a visible location, that the ceiling tiles needed to be replace[d], that he needed certain prior inspections, and that he would be happy to come back out for a reinspection."
 

 Days later, on 19 August 2011, plaintiff and Turner held a grand opening for Juice Bar. City of Raleigh Police Sergeant Michael Peterson obtained a social media advertisement from the Raleigh Police Department Intelligence Center indicating that approximately 700 teenagers planned to attend.
 
 [1]
 
 In order
 
 *111
 
 to learn more about Juice Bar, Sergeant Peterson contacted Joette Holman, City of Raleigh License Review
 
 *332
 
 Technician, and David Hickman in the City's Inspections Department. Holman informed Sergeant Peterson that defendant did not issue Juice Bar an AEP but that an application had been submitted. Hickman told Sergeant Peterson that the requisite inspections for the AEP had not been conducted.
 

 Holman informed her supervisor, Sergeant Austin, about her conversation with Sergeant Peterson. Sergeant Austin then added Juice Bar to Netforces' list of nightclubs to inspect on 19 August 2011. Netforces, a multi-agency task force, is comprised of members of the City of Raleigh's Inspections Department, Police Department, and Fire Department, as well as representatives of Wake County and the State of North Carolina. "Netforces conducts inspections of nightclubs in the City of Raleigh and attempts to identify structural deficiencies, fire code violations, license violations, and health code violations."
 

 Sergeant Peterson and Officer M.T. McKee drove separately to Juice Bar to observe the grand opening. When Sergeant Peterson arrived, he saw Officer G.T. Porter enter Juice Bar. Officer Porter was off-duty and providing security services at an adjacent grocery store. When Sergeant Peterson saw Officer Porter leave Juice Bar, he called Officer Porter to ask the purpose of his visit. Officer Porter stated that he approached Juice Bar out of curiosity, that he met the owner and informed him about Netforces, and that he advised the owner to make sure he obtained all requisite permits to operate his business.
 

 Shortly thereafter, the Netforces team arrived at Juice Bar and observed violations of the fire code and health code. Plaintiff was identified as the owner and was issued a citation for selling food in violation of N.C. Gen.Stat. § 130A-248(b). A member of the Netforces team asked plaintiff to provide a copy of his business licenses and permits, and when plaintiff could not produce an AEP, Sergeant Peterson directed Officer McKee to arrest him. In Sergeant Peterson's affidavit, he stated,
 

 15. Based on my observations at the Juice Bar Teen Lounge on August 19, 2011, my earlier conversations with Ms. Holman and Mr. Hickman, and information I gathered during the Netforces inspection from members of the Netforces inspection team, I concluded that there was probable cause to believe that Plaintiff had violated the AEP Ordinance by providing amplified entertainment without first obtaining an AEP.
 

 16. Because I knew that the Plaintiff had been provided information about the AEP ordinance and its requirements
 
 *333
 
 during the application process, and that Plaintiff had been specifically warned by Officer Porter to be certain that he had obtained all necessary permits, I determined that Plaintiff's blatant violation of the AEP Ordinance warranted his arrest.
 

 Plaintiff was charged with operating a business without first obtaining licenses and permits required by the Raleigh City Code. The magistrate's order states, "Subject failed to have a priviledge [sic] business permit and an amplified entertainment permit." The parties concede that plaintiff did not possess an AEP on 19 August 2011. On 16 August 2012, plaintiff filed a complaint in federal court alleging claims against defendant and Officer McKee in his individual capacity. On 30 September 2013, the parties filed a stipulation that all claims against Officer McKee were dismissed without prejudice. On 20 May 2014, the federal court dismissed plaintiff's remaining claims without prejudice. Because the claim for which the court had original jurisdiction was dismissed by stipulation, the court declined to exercise supplemental jurisdiction over the remaining state-law claims.
 

 On 19 June 2014, plaintiff filed a complaint in Wake County Superior Court alleging the following claims against defendant: false imprisonment/false arrest; malicious prosecution; and violations of Article I, Sections 1, 19 - 21, and 35 - 36 of the North Carolina Constitution. Plaintiff filed an amended complaint on 1 October 2014. On 17 November 2014, defendant filed an answer to plaintiff's
 
 *112
 
 complaint, and on 2 February 2015, defendant filed a motion for summary judgment. Defendant argued there was no genuine issue of material fact and it was entitled to judgment as a matter of law because (1) plaintiff's arrest was supported by probable cause; (2) immunity barred plaintiff's claims; (3) the existence of common law remedies barred plaintiff's North Carolina constitutional claims; and (4) no statutory basis supported plaintiff's claim for punitive damages.
 

 On 30 March 2015, the superior court granted defendant's motion for summary judgment and dismissed with prejudice all of plaintiff's claims. The court did not specify in the order the basis for its ruling. Plaintiff appeals.
 

 II. Analysis
 

 "On appeal, this Court reviews an order granting summary judgment
 
 de novo.
 
 "
 
 Manecke v. Kurtz,
 

 222 N.C.App. 472
 
 , 475,
 
 731 S.E.2d 217
 
 , 220 (2012) (citations omitted). "Under a
 
 de novo
 
 review, the court considers the matter anew and freely substitutes its own judgment for that of the
 
 *334
 
 lower tribunal."
 
 Smith v. Cnty. of Durham,
 

 214 N.C.App. 423
 
 , 430,
 
 714 S.E.2d 849
 
 , 854 (2011) (citation and quotations omitted).
 

 A motion for summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen.Stat. § 1A-1, Rule 56(c) (2013). "In deciding a motion for summary judgment, a trial court must consider the evidence in the light most favorable to the non-moving party."
 
 Azar v. Presbyterian Hosp.,
 

 191 N.C.App. 367
 
 , 370,
 
 663 S.E.2d 450
 
 , 452 (2008) (citing
 
 Summey v. Barker,
 

 357 N.C. 492
 
 , 496,
 
 586 S.E.2d 247
 
 , 249 (2003) ). "The moving party bears the burden of showing that no triable issue of fact exists."
 

 Id.
 

 (citing
 
 Pembee Mfg. Corp. v. Cape Fear Constr. Co.,
 

 313 N.C. 488
 
 , 491,
 
 329 S.E.2d 350
 
 , 353 (1985) ). "Once the moving party has met its burden, the non-moving party must forecast evidence that demonstrates the existence of a
 
 prima facie
 
 case."
 

 Id.
 

 (citing
 
 Collingwood v. G.E. Real Estate Equities,
 

 324 N.C. 63
 
 , 66,
 
 376 S.E.2d 425
 
 , 427 (1989) ). "If the granting of summary judgment can be sustained on any grounds, it should be affirmed on appeal."
 
 Shore v. Brown,
 

 324 N.C. 427
 
 , 428,
 
 378 S.E.2d 778
 
 , 779 (1989).
 

 Plaintiff argues that because his business falls within an exemption provided in the AEP ordinance, defendant could not have had probable cause to arrest him for violating the ordinance. Plaintiff also argues that his constitutional claims are not barred because he does not have an adequate remedy under state law as defendant claims it is shielded by governmental immunity. Lastly, plaintiff states that governmental immunity does not apply because defendant purchased insurance that applies to plaintiff's claims.
 

 Defendant contends that the trial court properly granted summary judgment in its favor based on two theories. First, defendant had probable cause to arrest plaintiff, which defeats plaintiff's claims for false arrest and malicious prosecution. Second, even if there were doubt regarding probable cause, defendant has governmental immunity. Defendant also argues that state law remedies bar plaintiff's direct claims under the North Carolina Constitution.
 

 A. Probable Cause
 

 "[U]nder state law, a cause of action in tort will lie for false imprisonment, based upon the 'illegal restraint of one's person against his will.' A false arrest,
 
 i.e.,
 
 one without proper legal authority, is one means of
 
 *335
 
 committing a false imprisonment."
 
 Williams v. City of Jacksonville Police Dep't,
 

 165 N.C.App. 587
 
 , 596,
 
 599 S.E.2d 422
 
 , 430 (2004) (quoting
 
 Myrick v. Cooley,
 

 91 N.C.App. 209
 
 , 212,
 
 371 S.E.2d 492
 
 , 494 (1988) ). "Probable cause is an absolute bar to a claim for false arrest."
 

 Id.
 

 (citing
 
 Burton v. City of Durham,
 

 118 N.C.App. 676
 
 , 682,
 
 457 S.E.2d 329
 
 , 333 (1995) ).
 

 A plaintiff must establish four elements to prove a claim for malicious prosecution: "(1) the defendant initiated the earlier proceeding; (2) malice on the part of the defendant in doing so; (3) lack of probable cause for the initiation of the earlier proceeding; and (4) termination of the earlier proceeding
 
 *113
 
 in favor of the plaintiff."
 
 Nguyen v. Burgerbusters, Inc.,
 

 182 N.C.App. 447
 
 , 450,
 
 642 S.E.2d 502
 
 , 505 (2007) (citations and quotations omitted). "[T]he presence of probable cause necessarily defeats plaintiff's claim."
 
 Martin v. Parker,
 

 150 N.C.App. 179
 
 , 182,
 
 563 S.E.2d 216
 
 , 218 (2002). "Whether probable cause exists is a mixed question of law and fact, but where the facts are admitted or established, the existence of probable cause is a question of law for the court."
 
 Best v. Duke Univ.,
 

 337 N.C. 742
 
 , 750,
 
 448 S.E.2d 506
 
 , 510 (1994) (citing
 
 Cook v. Lanier,
 

 267 N.C. 166
 
 , 171,
 
 147 S.E.2d 910
 
 , 914 (1966) ).
 

 Plaintiff argues that he was not required to obtain an AEP, that he was exempt from the ordinance because he was not going to provide amplified entertainment on a regular basis, and that penal ordinances and their exemptions are strictly construed. He further contends, "[T]he Ordinance cannot apply to [him] because, as of his arrest on August 19, 2011, he had used amplified entertainment 'four of [sic] fewer times a year.' " "[B]ecause the Ordinance cannot apply to him, there could not be probable cause to arrest [him] as a matter of law."
 

 Defendant argues, "Although Appellant couches his argument in terms of probable cause, he actually argues that he was not
 
 guilty
 
 of violating the AEP ordinance. However,
 
 conviction
 
 of an offense requires proof beyond a reasonable doubt while probable cause is a much lower standard." Defendant notes, "While the AEP ordinance provides an exemption for any establishment providing amplified entertainment four or fewer times a year, this exemption is intended to apply to establishments which do not provide amplified entertainment during the ordinary course of business." Further, defendant claims, a business that provides amplified entertainment in the ordinary course of business must obtain an AEP prior to providing
 
 any
 
 amplified entertainment and "may not wait until after the fourth time that amplified entertainment is provided." Holman stated in her affidavit that this interpretation of the AEP ordinance has been consistently applied by defendant.
 

 *336
 
 The AEP Ordinance provides, in pertinent part, the following:
 

 Section 12-2118. Definition.
 

 All establishments located in Raleigh and providing amplified music or other amplified entertainment shall possess an
 
 Amplified Entertainment Permit.
 
 Amplified Entertainment
 
 shall
 
 mean any type of music or other entertainment delivered through and by an electronic system. Televisions operating with no amplification other than their internal speakers and background music systems operated at a low amplification and not intended for entertainment
 
 shall
 
 not be deemed Amplified Entertainment.
 

 Religious worship facilities, schools and any establishment providing amplified entertainment four or fewer times a year are exempt from the provisions of this Division.
 

 Section 12-2124, Penalties.
 

 ....
 

 (b) In addition to the above fines and suspension, a violation of this ordinance is also a misdemeanor and
 
 may
 
 also be enforced through injunctive or other equitable relief.
 

 "It is a well-established principle that an officer may make a warrantless arrest for a misdemeanor committed in his or her presence."
 
 State v. Brooks,
 

 337 N.C. 132
 
 , 145,
 
 446 S.E.2d 579
 
 , 588 (1994) (citing N.C. Gen.Stat. § 15A-401(b)(1) ) ("Arrest by Officer Without a Warrant.-(1) Offense in Presence of Officer.-An officer may arrest without a warrant any person who the officer has probable cause to believe has committed a criminal offense."). "Probable cause 'may be based upon information given to the officer by another, the source of such information being reasonably reliable.' "
 
 In re
 

 Gardner,
 

 39 N.C.App. 567
 
 , 571,
 
 251 S.E.2d 723
 
 , 725 (1979) (quoting
 
 State v. Roberts,
 

 276 N.C. 98
 
 , 107,
 
 171 S.E.2d 440
 
 , 445 (1970) ).
 

 "The existence of probable cause is a 'commonsense, practical question' that should be answered using a 'totality-of-the-circumstances approach.' "
 
 State v. McKinney,
 

 361 N.C. 53
 
 , 62,
 
 637 S.E.2d 868
 
 , 874 (2006) (quoting
 
 *114
 

 Illinois v. Gates,
 

 462 U.S. 213
 
 , 230-31,
 
 103 S.Ct. 2317
 
 , 2328-29,
 
 76 L.Ed.2d 527
 
 , 543 (1983) ). "Probable cause is defined as those facts and circumstances within an officer's knowledge and of which he had reasonably trustworthy information which are sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense."
 
 *337
 

 State v. Biber,
 

 365 N.C. 162
 
 , 168-69,
 
 712 S.E.2d 874
 
 , 879 (2011) (quoting
 
 State v. Williams,
 

 314 N.C. 337
 
 , 343,
 
 333 S.E.2d 708
 
 , 713 (1985) ) (quotations omitted). Probable cause " 'does not demand any showing that such a belief be correct or more likely true than false. A practical, nontechnical probability that incriminating evidence is involved is all that is required.' "
 
 Id.
 
 at 169,
 
 712 S.E.2d at 879
 
 (quoting
 
 Texas v. Brown,
 

 460 U.S. 730
 
 , 742,
 
 103 S.Ct. 1535
 
 , 1543,
 
 75 L.Ed.2d 502
 
 , 514 (1983) ). "A probability of illegal activity, rather than a prima facie showing of illegal activity or proof of guilt, is sufficient."
 

 Id.
 

 (citing
 
 Gates,
 

 462 U.S. at 235
 
 , 103 S.Ct. at 2330,
 
 76 L.Ed.2d at
 
 546 ). Probable cause encompasses " 'factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' "
 
 Gates,
 

 462 U.S. at 231
 
 , 103 S.Ct. at 2328,
 
 76 L.Ed.2d at 544
 
 (quoting
 
 Brinegar v. United States,
 

 338 U.S. 160
 
 , 175,
 
 69 S.Ct. 1302
 
 , 1310,
 
 93 L.Ed. 1879
 
 , 1890 (1949) ).
 

 Here, defendant had probable cause to believe that plaintiff was violating the AEP ordinance on 19 August 2011. The AEP application that plaintiff filled out includes a one-page instruction sheet that states in bold and underlined text, "A business may not provide Amplified Entertainment until it has received an Amplified Entertainment Permit." Moreover, defendant had knowledge that plaintiff applied for the AEP and that an AEP had not been issued to Juice Bar. When the Netforces team and Raleigh Police arrived at Juice Bar, they observed a cashbox being used to collect admission fees, televisions mounted to the walls playing music videos, and a DJ playing amplified music through a sound system.
 

 Although the AEP ordinance does not specifically state how the exemption applies, Sergeant Peterson was reasonable in concluding there was a "practical, nontechnical probability that incriminating evidence" was involved.
 
 See
 

 Biber,
 

 365 N.C. at 169
 
 ,
 
 712 S.E.2d at 879
 
 . Because an officer's probable cause determination is not one of a legal technician,
 
 see
 

 Gates,
 

 462 U.S. at 231
 
 , 103 S.Ct. at 2328,
 
 76 L.Ed.2d at 544
 
 , Sergeant Peterson acted as a reasonable, prudent person in concluding that plaintiff was providing amplified entertainment, plaintiff was required to have an AEP, plaintiff could not present an AEP to Netforces, and, as a result, plaintiff was in violation of the AEP ordinance-a misdemeanor.
 

 Probable cause is not eliminated based on an after-the-fact decision by the State not to prosecute a particular claim or a conclusion by a court that a defendant is not guilty. Law enforcement officers need not have
 
 prima facie
 
 proof of guilt of illegal activity, only a probability.
 
 See
 

 Biber,
 

 365 N.C. at 169
 
 ,
 
 712 S.E.2d at 879
 
 . Although plaintiff emphasizes that Sergeant Peterson has arrested thousands of people in his career but he has never arrested someone for failing to have an AEP, this is not
 
 *338
 
 relevant to the probable cause inquiry.
 
 See
 

 State v. McClendon,
 

 350 N.C. 630
 
 , 636,
 
 517 S.E.2d 128
 
 , 132 (1999) ("[A]n objective standard, rather than a subjective standard, must be applied to determine the reasonableness of police action related to probable cause."). Because a finding of probable cause necessarily defeats plaintiff's claims for false arrest and malicious prosecution, we need not address governmental immunity as there is no liability.
 

 B. Constitutional Claims
 

 Plaintiff's sole argument regarding his constitutional claims is that he does not have an adequate remedy under state law due to defendant's assertion of governmental immunity, citing
 
 Craig v. New Hanover County Board of Education,
 

 363 N.C. 334
 
 , 340,
 
 678 S.E.2d 351
 
 , 355 (2009), for the proposition that "if 'governmental immunity stands as an absolute bar,' the state law claim 'does not provide an adequate remedy.' "
 

 In
 
 Corum v. University of North Carolina,
 
 our Supreme Court stated, "[I]n the absence of an adequate state remedy, one whose state constitutional rights have been abridged has
 
 *115
 
 a direct claim against the State under our Constitution."
 
 330 N.C. 761
 
 , 782,
 
 413 S.E.2d 276
 
 , 289 (1992). Here, unlike
 
 Craig,
 
 governmental immunity does not stand as an absolute bar to plaintiff's state law claims. "Because state law gives plaintiff the opportunity to present his claims and provides 'the possibility of relief under the circumstances,' plaintiff's state constitutional claims must fail."
 
 Wilkerson v. Duke Univ.,
 

 229 N.C.App. 670
 
 , 676,
 
 748 S.E.2d 154
 
 , 159 (2013).
 

 III. Conclusion
 

 The trial court did not err in granting defendant's motion for summary judgment based on the presence of probable cause.
 

 AFFIRMED.
 

 Judges CALABRIA and ZACHARY concur.
 

 [1]
 

 The advertisement lists 748 people as "attending," 694 people as "maybe attending," 23,231 people as "awaiting reply," and 1,526 people as "not attending."