MURPHY, Judge.
BACKGROUND
This case arises out of events that took place in 2012, leading to the arrest of Plaintiff, Gregory Painter, by Mt. Holly police. Plaintiff owned property in Mt. Holly that is the site of an auto body shop, which Plaintiff also owned (hereinafter "the property"). Plaintiff leased the property and the business to Defendants Chris and Tracy Small ("the Smalls"), who also resided at the property. Defendant Chad Austin also lived on the property. Plaintiff attempted to evict Austin and the Smalls through the commercial lease eviction process, but the magistrate assigned to the proceedings denied the claim and required Plaintiff to use the residential eviction process instead. In his attempts to remove the Smalls and Austin, Plaintiff locked four customers' cars behind a fence that neither the Smalls nor the customers could open.
Defendant Thomas Sperling ("Sperling") was a police officer for the Mt. Holly Police Department in September 2012 when the Mt. Holly Police Department received a series of calls regarding incidents at the property and reporting that vehicles had been stolen therefrom. Sperling responded to calls from the Smalls and Austin on 10 September 2012 and undertook an investigation. Sperling wrote up two incident reports detailing his investigation, and sought the advice of the District Attorney's office as to whether he should seek arrest warrants for Plaintiff on charges including felonious breaking and entering and larceny of a motor vehicle. Based on his investigation and the advice of an Assistant District Attorney, Sperling appeared before a magistrate and was granted arrest warrants for Plaintiff. As part of this process, Sperling filled out a probable cause affidavit, but it was rendered unavailable to both parties at some time prior to this appeal and is not included in the record before us.
After arrest warrants were issued for Plaintiff, police officers from the Belmont Police Department executed the warrants and arrested Plaintiff at his residence. Sperling did not take part in the arrest. Assistant District Attorney Jeff Jackson subsequently took voluntary dismissals of all cases against Plaintiff because Austin was unable to testify for the prosecution due to serious illness.
Plaintiff filed this action on 10 September 2015 against the City of Mt. Holly (hereinafter "Mt. Holly"), Mt. Holly police officers James Benfield ("Benfield") and Sperling, the City of Belmont, Austin, and the Smalls. Plaintiff filed an Amended Complaint on 6 December 2015, raising seven causes of action: (1) False Imprisonment and Arrest; (2) Abuse of Process/Malicious Prosecution; (3) Conspiracy to Violate the North Carolina Constitution; (4) Negligent Hiring, Training, Supervision, and Retention; (5) Violation of rights under the U.S. Constitution pursuant to 42 U.S.C. § 1983 ; (6) Conspiracy to Violate Constitutional Rights pursuant to 42 U.S.C. § 1985 ; and (7) Malicious Conduct giving rise to Punitive Damages. Austin and the Smalls are not parties to this appeal, and the City of Belmont was granted summary judgment on 2 October 2017. The only causes of action before us are those Plaintiff brought against Benfield and Sperling (Claims 1-3 and 5-7) and Mt. Holly (Claims 1-4).
Plaintiff's Claim (1) alleges Sperling and Benfield, "individually and on behalf of their employer, the Mt. Holly PD ..., handcuffed Plaintiff and locked him in a police car, sequestering him in his own residence and took him to jail[,]" amounting to false imprisonment and arrest. Claim (2) alleges Sperling and Benfield "violated their duty of care to Plaintiff ... in arresting Plaintiff without probable cause (knowing him to be innocent of the charges levied) and in prosecuting Plaintiff for unlawful, illegitimate and malicious reasons." In Claim (3), Plaintiff contends Sperling and Benfield "intentionally acted, combined and conspired to deprive Plaintiff of his constitutional rights to the equal protection of the laws; ... subjected Plaintiff to an unlawful search and seizure ... depriving him of his liberty and freedom (including free speech on matters of public interest) ...."
Claim (4) is brought solely against Mt. Holly, and alleges:
Mt. Holly failed to properly screen applicants for positions involving law enforcement and/or failed to properly train and supervise said personnel .... Further, [Mt. Holly] knew or should have known of the inadequacy of the training, and of [Benfield and Sperling's] inability to properly execute his duties involving the investigation and arrest of citizens and members of the public.
Plaintiff also alleges Mt. Holly is vicariously liable for Claims (1)-(3).
In Claims (5) and (6), Plaintiff asserts federal claims against Benfield and Sperling.[1] Claim (5) alleges in relevant part, "Defendants deprived Plaintiff of his civil rights while acting under color of state law, as proscribed by 42 U.S.C. § 1983, by ... depriving Plaintiff of his liberty and property without due process ... in violation of the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution ... and Article I, § 16 of the North Carolina Constitution...." Claim (6) is likewise grounded in the United States Code, alleging, "two or more of the named Defendants willfully and intentionally combined and conspired to retaliate against Plaintiff ...." Finally, Claim (7) alleges Sperling and Benfield "are each guilty of malicious, willful, and wanton conduct directed toward [Plaintiff] .... As a result of egregiously wrongful conduct, said Defendants are subject to the imposition of punitive damages in such amounts as may be properly awarded by a jury ...."
In their answer to the amended complaint, Sperling, Benfield, and Mt. Holly denied Plaintiff's allegations and asserted a number of defenses, including: lack of subject matter jurisdiction; failure to state a claim upon which relief can be granted; governmental immunity; qualified immunity; public official immunity; the public duty doctrine; unclean hands; and the statute of limitations. Sperling, Benfield, and Mt. Holly later moved for summary judgment, arguing:
Defendants did not engage in tortious conduct towards the [P]laintiff nor violate is [sic] civil rights; Plaintiff's tort claims are barred by governmental immunity; Plaintiff has failed to establish that a lack of probable cause existed for his arrest and there is no showing of malice; and the claims against [Sperling and Benfield] are barred by qualified immunity and public official's immunity.
Defendants' Motion for Summary Judgment was denied on 2 October 2017. Now, Defendants timely appeal the denial of the motion for summary judgment and argue the trial court erred in denying that motion. On appeal, Defendants allege they are entitled to both public official and qualified immunity, there was sufficient probable cause to support Plaintiff's arrest, Plaintiff failed to make prima facie cases regarding Claims (4) and (5), and Plaintiff had an adequate state law remedy that bars him from bringing Claim (3).
ANALYSIS
A. Interlocutory Review
Defendants appeal the trial court's interlocutory order denying Defendants' motion for summary judgment without waiting for a final judgment. "An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy." Royal Oak Concerned Citizens Ass'n v. Brunswick County , 233 N.C. App. 145, 148, 756 S.E.2d 833, 835 (2014). Defendants assert they are entitled to an interlocutory appeal because the trial court's order affects Defendants' substantial right of immunity. We agree.
"[A]ppeal lies of right directly to the Court of Appeals ... [f]rom any interlocutory order or judgment of a superior court or district court in a civil action or proceeding that ... [a]ffects a substantial right." N.C.G.S. § 7A-27(b)(3) (2017). Generally, a substantial right argument requires a case-specific analysis of the facts and procedural context of the appeal, but our courts have repeatedly held that "claims of immunity ... affect a substantial right for purposes of appellate review." See Royal Oak Concerned Citizens Ass'n , 233 N.C. App. at 149, 756 S.E.2d at 836. This Court "has neither held 'that non-immunity-related issues [will] always be considered on the merits in the course of deciding an immunity-related interlocutory appeal' nor 'recognized the existence of a substantial right to have multiple issues addressed in the course of an immunity-related appeal.' " Brown v. Town of Chapel Hill , 233 N.C. App. 257, 263, 756 S.E.2d 749, 754 (2014) (citing Bynum v. Wilson Cnty. , 228 N.C. App. 1, 6, 746 S.E.2d 296, 300 (2013), rev'd on other grounds , 367 N.C. 355, 758 S.E.2d 643 (2014) ). Here, we choose to exercise our discretion to consider the merits of Defendants' non-immunity issues on appeal.
"Our standard of review of an appeal from summary judgment is de novo; such judgment is appropriate only when the record shows that 'there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.' " In re Will of Jones , 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (quoting Forbis v. Neal , 361 N.C. 519, 523-24, 649 S.E.2d 382, 385 (2007) ).
B. Public Official Immunity [Claims (1), (2), and (7) ]
Defendants Benfield and Sperling assert the defense of public official immunity for Claims (1), (2), and (7), and argue the trial court improperly denied their motion for summary judgment. We agree and reverse the trial court's denial of summary judgment as to these claims.
"Public official immunity is a derivative form of governmental immunity." Wilcox v. City of Asheville , 222 N.C. App. 285, 288, 730 S.E.2d 226, 230 (2012) (internal citations omitted). The doctrine protects public officials from liability "[a]s long as a public officer lawfully exercises the judgment and discretion with which he is invested by virtue of his office, keeps within the scope of his official authority, and acts without malice or corruption[.]" Smith v. State , 289 N.C. 303, 331, 222 S.E.2d 412, 430 (1976) (citing Carpenter v. Atlanta & C.A.L. Ry. Co. , 184 N.C. 400, 406, 114 S.E. 693, 696 (1922) ). A public officer is a person in a position created either statutorily or by the constitution and who exercises some amount of sovereign power through discretionary acts, or acts which require the officer to use his judgment. See Meyer v. Walls , 347 N.C. 97, 113, 489 S.E.2d 880, 889 (1997). However, there are exceptions to public official immunity, namely where the official's actions "are determined to be malicious or corrupt ... or beyond the scope of their official duties." Dempsey v. Halford , 183 N.C. App. 637, 640, 645 S.E.2d 201, 205 (2007). To survive a motion for summary judgment based upon public official immunity, a plaintiff must show the official's actions fell within an immunity exception. Id. at 640-41, 645 S.E.2d at 205.
Here, as law enforcement officers, Defendants Sperling and Benfield qualify as public officers. State v. Hord , 264 N.C. 149, 155, 141 S.E.2d 241, 245 (1965). Law enforcement officers are "appointed pursuant to statutory authority[ ] and ... [their] authority in enforcing the criminal laws involves the discretionary exercise of some portion of sovereign power." Isenhour v. Hutto , 350 N.C. 601, 610, 517 S.E.2d 121, 127-28 (1999).
Furthermore, Sperling and Benfield were acting in their official capacity at all relevant times for the purposes of Plaintiff's suit, and Plaintiff has not forecast any evidence that their actions fall within an exception to public official immunity. Sperling and Benfield acted in response to criminal complaints about Plaintiff by conducting an investigation and seeking arrest warrants. These actions are well within the scope of official duties for a law enforcement officer; it is the crux of their job. Plaintiff does not allege any facts suggesting Sperling or Benfield acted outside the scope of their official duties such that those actions would fall under an immunity exception. Defendants Benfield and Sperling should have been granted summary judgment on Claims (1), (2), and (7) on the basis of public official immunity.
C. Lack of Prima Facie Case [Claims (4) and (5) ]
1. Claim (4) - Negligent Hiring, Supervision, Retention
In Claim (4), Plaintiff alleges Mt. Holly is liable for the negligent hiring, supervision, and retention of law enforcement officers "specifically including but not limited to [Benfield and Sperling] ...." To establish a claim of negligent hiring, supervision, or retention, a plaintiff must prove four things: (1) a specific tortious act by the employee; (2) the employee's incompetency, "by inherent unfitness or previous specific acts of negligence, from which incompetency may be inferred"; (3) the employer's actual or constructive notice of such unfitness or prior bad acts; and (4) injury resulting from the employee's incompetency. Medlin v. Bass , 327 N.C. 587, 590-91, 398 S.E.2d 460, 462 (1990). Plaintiff has failed to forecast evidence tending to prove these elements.
Here, Plaintiff fails to forecast any evidence tending to show that either Benfield or Sperling-or any other Mt. Holly police officer-was incompetent. Plaintiff does not allege any facts indicating Benfield or Sperling were inherently unfit or had committed any bad acts prior to the incidents in question. There is no evidence that Benfield or Sperling had any disciplinary infractions on their records from any law enforcement position, either before or during their time at Mt. Holly. Additionally, Plaintiff does not present any facts or argument that Mt. Holly was actually or constructively on notice of such unfitness or prior bad acts. Taking the evidence on the record in the light most favorable to Plaintiff, there is no genuine issue of material fact as to Plaintiff's negligent hiring, supervision, or retention claim against Mt. Holly. As to Claim (4), Mt. Holly is entitled to judgment as a matter of law. Consequently, the trial court erred in denying summary judgment for Mt. Holly on Claim (4).
2. Claim (5) - 42 U.S.C. § 1983
In Claim (5), Plaintiff asserts claims against Sperling and Benfield for civil damages under 42 U.S.C. § 1983. That section of the U.S. Code provides:
Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
42 U.S.C. § 1983 (2017).
In Claim (5), Plaintiff alleges Benfield and Sperling:
deprived Plaintiff of his civil rights while acting under color of state law, as proscribed by 42 U.S.C. § 1983, by violating the laws and Constitutional guarantees of the State of North Carolina and the United States, in depriving Plaintiff of his liberty and property without due process and contrary to the law of the land (in violation of the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution ... and Article I, § 16 of the North Carolina Constitution...) using excessive and unnecessary force in effecting the (wrongful) arrests of Plaintiff without probable cause, and in assaulting Plaintiff by means of force and using a non-lethal weapon, to wit: handcuffs.
However, neither Benfield nor Sperling participated in Plaintiff's arrest. Factually speaking, Benfield and Sperling could not have deprived Plaintiff of his rights as he alleges in Claim (5) because they did not personally participate in the arrest from which these allegations arise.
Moreover, Plaintiff seeks monetary damages from State officials for violations that allegedly occurred while they were acting in their official capacity. The U.S. Supreme Court has "held that when an action is brought under section 1983 in state court against the State, its agencies, and/or its officials acting in their official capacities, neither a State nor its officials acting in their official capacity are 'persons' under section 1983 when the remedy sought is monetary damages." Corum v. Univ. of N.C. , 330 N.C. 761, 771, 413 S.E.2d 276, 282-83 (1992) (citing Kentucky v. Graham , 473 U.S. 159, 165-67, 87 L.Ed. 2d 114, 121-22 (1985) ). Plaintiff does not allege any facts indicating his suit arises out of actions taken by Defendants while acting outside of their official capacity as law enforcement officers. Instead, he alleges Benfield and Sperling "deprived Plaintiff of his civil rights while acting under color of state law ...." Further, Plaintiff's prayer for relief does not specifically seek any equitable relief, but only monetary damages. Therefore, Benfield and Sperling are not "persons" liable for suit under 42 U.S.C. § 1983.
As to Claim (5), taking the facts in the light most favorable to Plaintiff, he has failed to assert a valid claim against Benfield or Sperling, and Defendants are entitled to judgment as a matter of law.
D. Qualified Immunity (Claim 6)
Defendants Benfield and Sperling next assert the defense of qualified immunity for Plaintiff's federal law claims, (5) and (6). As is discussed above, Plaintiff failed to prove a prima facie case as to Claim (5), so we need only discuss Claim (6).
"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." Reichle v. Howards , 566 U.S. 658, 664, 182 L.Ed. 2d 985, 992 (2012). Specifically, qualified immunity "turns on the 'objective legal reasonableness' of the [official's] action ... assessed in light of the legal rules that were 'clearly established' at the time it was taken." Roberts v. Swain , 126 N.C. App. 712, 718, 487 S.E.2d 760, 765 (1997) (quoting Anderson v. Creighton , 483 U.S. 635, 639, 107 S.Ct. 3034, 3038 (1987) ).
In Claim (6), Plaintiff asserts a second federal cause of action, arising under 42 U.S.C. § 1985, against Benfield and Sperling, alleging:
two or more of the named Defendants willfully and intentionally combined and conspired to retaliate against Plaintiff for complaining about the unlawful use or possession of crack cocaine on his property, for lawfully exercising his property rights to terminate a leasehold and to eject tenants for breach of a lease agreement, to deprive him of his business and personal property and interfere with Plaintiff's gainful employment, and to fabricate false and pretextual reasons for the arrest, detention and prosecution of Plaintiff as a common criminal, depriving Plaintiff of his rights, privileges and immunities under the law.
42 U.S.C. § 1985 prohibits conspiracies to interfere with an individual's civil rights. Although Plaintiff does not specify under which of 42 U.S.C. § 1985 's three sections his claim falls, his language regarding a deprivation of "rights, privileges and immunities" appears to implicate the statute's third subsection, "Depriving persons of rights or privileges." 42 U.S.C. § 1985(3). Additionally, Plaintiff does not identify which "named Defendants" he alleges conspired to interfere with his civil rights or how they did so.
Even assuming arguendo Plaintiff has presented enough evidence to survive summary judgment on this claim, Defendants are nevertheless entitled to qualified immunity pursuant to the U.S. Supreme Court's recent decision in Ziglar v. Abbasi , 137 S.Ct. 1843, 198 L.Ed. 2d 290 (2017). In Ziglar , the Supreme Court considered a plaintiff's claim that law enforcement officials employed by the Department of Justice and a federal prison, conspired against the plaintiff in a manner proscribed by 42 U.S.C. § 1985(3). Id. at 1851-52, 198 L.Ed. 2d at 302-03. The officers in Ziglar argued they were entitled to qualified immunity from the plaintiff's § 1985 claim because they worked for the same police department and were therefore protected by the intra-corporate conspiracy doctrine. Id. at 1867, 198 L.Ed. 2d at 318. The Court held, "as to whether or not a § 1985(3) conspiracy can arise from official discussions between or among agents of the same entity ... the law on point is not well established." Id. at 1868, 198 L.Ed. 2d at 321. In the absence of such a clearly established right, the officer-defendants were entitled to qualified immunity from a 42 U.S.C. § 1985 conspiracy claim because they were employed by the same department. Id.
Here, as in Ziglar , Benfield and Sperling were employees of the same police department at all relevant times for the purposes of this suit. Plaintiff's Claim (6) alleges the two engaged in a 42 U.S.C. § 1985(3) conspiracy during that time, but Benfield and Sperling contend they are entitled to immunity because of the intra-corporate conspiracy doctrine. Ziglar was decided on 19 June 2017, well after any and all of Benfield and Sperling's actions here. Therefore, Benfield and Sperling are entitled to qualified immunity as to Claim (6) because, at the time this action arose, it was not clearly established that a § 1985(3) conspiracy could arise from official discussions between agents of the same entity. Id. ; Reichle , 556 U.S. at 669-70, 182 L.Ed. 2d at 995 (2012).
E. Probable Cause [Claims (1) and (2) as against Mt. Holly]
Regarding Claims (1) and (2), for false arrest and malicious prosecution, respectively, the presence of probable cause forecloses the possibility of Plaintiff's recovery against Mt. Holly. Here, because there was probable cause for Plaintiff's arrest, Mt. Holly is entitled to summary judgment on Claims (1) and (2).
We have unequivocally held "a finding of probable cause necessarily defeats [a] plaintiff's claims for false arrest and malicious prosecution" against a municipality as well as its agents. Adams v. City of Raleigh , 245 N.C. App. 330, 338, 782 S.E.2d 108, 114 (2016). "The existence of probable cause is a 'commonsense, practical question' that should be answered using a 'totality-of-the-circumstances approach.' " State v. McKinney , 361 N.C. 53, 62, 637 S.E.2d 868, 874 (2006) (quoting Illinois v. Gates , 462 U.S. 213, 230-31, 76 L.Ed. 2d 527, 543 (1983) ). Additionally, "[p]robable cause for an arrest warrant is presumed valid unless [the] plaintiff presents allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof." Beeson v. Palombo , 220 N.C. App. 274, 279, 727 S.E.2d 343, 347 (2012) (internal quotations omitted).
Here, Plaintiff has not made an offer of proof or a forecast of evidence to support an allegation of deliberate falsehood or reckless disregard for the truth. Plaintiff's brief does not present us with an argument as to why the evidence supporting his arrest warrants does not amount to probable cause. Instead, Plaintiff presents allegations, without citation to or support from the extensive record on appeal, regarding the subjective mental state of Sperling and Benfield. The record before us shows that Sperling obtained arrest warrants only after investigating formal complaints lodged against Plaintiff, speaking with Plaintiff about the allegations against him, presenting the case to his supervisor, seeking the instruction of an Assistant District Attorney-who advised Sperling to apply for the warrants before a neutral magistrate-and presenting his evidence to a neutral magistrate who then issued the arrest warrants. Given the record before us, and the lack of facts supporting Plaintiff's allegation that Sperling engaged in deliberate falsehood or reckless disregard for the truth in obtaining arrest warrants, the evidence establishes Plaintiff's arrest pursuant to an otherwise valid arrest warrant was supported by probable cause. As against Mt. Holly, Claims (1) and (2) are necessarily defeated by the presence of probable cause.
F. Adequate State Law Remedy [Claim (3) ]
In light of the analysis above, Plaintiff's sole remaining claim is Claim (3), alleging Benfield, Sperling, and Mt. Holly engaged in a conspiracy to violate the North Carolina Constitution. Plaintiff explicitly states that he "has no other adequate remedy at law and are [sic] entitled to prosecute this civil action directly under the North Carolina Constitution." We disagree.
A plaintiff may proceed with a direct claim under our Constitution when he lacks an adequate state law remedy. Corum , 330 N.C. at 782, 413 S.E.2d at 289. Such claims, often referred to as Corum claims, are not available where "state law gives [a] plaintiff the opportunity to present his claims and provides the possibility of relief under the circumstances." Wilkerson v. Duke Univ. , 229 N.C. App. 670, 676, 748 S.E.2d 154, 159 (2013). As was the case in Wilkerson , "[P]laintiff's state constitutional claims are based upon the same alleged conduct that underlies his state law claims." Id.
In Claim (1), Plaintiff alleges he was falsely arrested by the Defendants, and sues under state law. Likewise, in Claim (3) Plaintiff alleges the Defendants "intentionally acted, combined and conspired to deprive Plaintiff of his constitutional rights to the equal protection of the laws; [and] ... subjected Plaintiff to an unlawful search and seizure under the laws of the State of North Carolina, depriving him of his liberty and freedom ...." Claim (3) seeks redress for the same actions Plaintiff argued, in Claim (1), amount to a false arrest in violation of state law. Additionally, North Carolina law recognizes civil conspiracy as a valid cause of action where a plaintiff can show "(1) an agreement between two or more individuals; (2) to do an unlawful act or to do a lawful act in an unlawful way; (3) resulting in injury to [the] plaintiff inflicted by one or more of the conspirators; and (4) pursuant to a common scheme." Strickland v. Hedrick , 194 N.C. App. 1, 19, 669 S.E.2d 61, 72 (2008). Plaintiff did not pursue such a claim. In sum, Plaintiff's Claim (3) fails because there existed an adequate state law remedy, which renders his direct constitutional claim unavailable.
CONCLUSION
Defendants Benfield and Sperling are entitled to public official immunity as to Claims (1), (2), and (7), and qualified immunity as to Claim (6). Additionally, Plaintiff's Claim (3) should have been disposed of through summary judgment because an adequate state law remedy exists. As to Plaintiff's claims against Mt. Holly, Claims (1) and (2) are defeated by the presence of probable cause. Claims (4) and (5) both fail as a matter of law. Consequently, the trial court erred by denying summary judgment in favor of the Defendants.
REVERSED.
Report per Rule 30(e).
Judges STROUD and ZACHARY concur.

Given that both claims describe individual actions and actors, we read Claims (5) and (6) as allegations against Sperling and Benfield, the only remaining individual defendants in this suit.