IN THE COURT OF APPEALS OF NORTH CAROLINA

 2022-NCCOA-27

 No. COA20-698

 Filed 18 January 2022

 Mecklenburg County, No. 18 CVD 20536

 DAN KING PLUMBING HEATING & AIR CONDITIONING, LLC, Plaintiff,

 v.

 AVONZO HARRISON, Defendant.

 Appeal by Defendant from judgment entered on 12 March 2020 by Judge

 Paulina Havelka in Mecklenburg County District Court. Plaintiff filed a cross-

 appeal. Heard in the Court of Appeals 25 May 2021.

 Hull & Chandler, P.A., by A. Joseph Volta, for Plaintiff-Appellee/Cross-
 Appellant.

 Redding Jones, PLLC, by Joseph R. Pellington, Corey Parton, and Joseph H.
 Powell, for Defendant-Appellant.

 JACKSON, Judge.

¶1 This case presents a number of issues stemming from a contractual dispute

 between homeowner Avonzo Harrison (“Defendant”) and the company that installed

 his HVAC system, Dan King Plumbing Heating and Air Conditioning (“the

 Company”). The action began when the Company filed suit against Defendant for

 money owed on the contract, and in response Defendant filed counter-claims against

 the Company for breach of contract and unfair and deceptive trade practices
 DAN KING V. HARRISON

 2022-NCCOA-27

 Opinion of the Court

 (“UDTP”). Following a jury trial, the Company was found liable for breach of contract,

 but the trial court dismissed Defendant’s UDTP claim.

¶2 In his appeal, Defendant argues that the trial court erred in (1) ruling that the

 Company’s actions did not constitute UDTP; and (2) not allowing him to amend his

 counterclaim to add a new debt collections UDTP claim. In its cross-appeal, the

 Company contends that the trial court erred in (1) denying the Company’s motion for

 directed verdict on the breach of contract claim; (2) refusing to consider the

 Company’s claim for attorneys’ fees; and (3) denying the Company its right to make

 a final closing argument. We affirm in full the trial court’s rulings as to the

 amendment of the counterclaim and the ordering of closing arguments. Because we

 hold that the trial court erred, in part, with regard to its evaluation of Defendant’s

 UDTP claims and the Company’s motion for directed verdict, we affirm in part,

 reverse in part, and remand on these issues.

 I. Factual and Procedural Background

¶3 This case arises from a dispute between Defendant and the Company

 regarding plumbing, heating, and air conditioning services that the Company

 provided to Defendant in 2017—2018. Defendant is the owner of a home located on

 Symphony Woods Drive in Charlotte, North Carolina. Defendant decided to have a

 number of renovations done to the plumbing and HVAC systems in the home, and

 hired the Company for the task. On 25 October 2017, an employee of the Company,
 DAN KING V. HARRISON

 2022-NCCOA-27

 Opinion of the Court

 Adam Whal, visited Defendant’s home to provide estimates for the work—which

 included new water heaters, a new HVAC system, a water filtration system, and

 extensive piping replacement. Defendant was charged $227.37 for the initial site

 visit and inspection.

¶4 On 1 November 2017, Defendant went to the Company’s office in-person to

 meet with Paul Stefano, the general manager, and Ernie Rodriguez, the sales

 manager. The managers outlined options and prepared written quotes for the

 plumbing and HVAC work to be performed on Defendant’s home. After performing

 some independent research, Defendant returned to the office the following day and

 ultimately signed two separate contracts: a $16,324 contract for the plumbing work,

 and a separate $17,076 contract for the HVAC work. The work and warranties

 included, among other items not relevant to this appeal:

 (1) Plumbing

 a. Installing a whole-house water filtration system.

 i. 10-year parts, 5-year media, and 2-year labor warranty.

 b. Installing a tankless hot water heater and heat exchanger.

 i. 5-year parts and 5-year labor warranty, and 5-years of required
 maintenance.

 c. Replacement of all polybutylene piping with PEX piping “within
 reason,” not to include drywall repair.

 i. 2-year guarantee, including parts and labor.
 DAN KING V. HARRISON

 2022-NCCOA-27

 Opinion of the Court

 (2) HVAC

 a. Removing, replacing, and installing a 2-ton HVAC system upstairs and
 a 5-ton HVAC system downstairs.

 i. 12-year parts and labor warranty, and 1-year of
 maintenance.

 b. Insulating the attic.

¶5 Following the finalization of the contract on 2 November 2017, the Company

 began performing plumbing work in the home in early November 2017.1 The

 Company obtained a permit for the plumbing work, and the plumbing work was

 completed and ultimately passed its final inspection on 4 December 2017.

¶6 During the time that the Company was performing the plumbing work,

 Defendant was engaged in several other on-site home renovation projects, such as

 removing the old bathroom vanities and installing new ones, and removing the old

 kitchen cabinets and installing new ones. Defendant brought in outside workers from

 Habitat for Humanity to assist in this work.

¶7 Sometime during this period, the Company ran into unanticipated difficulties

 in installing the tankless water heaters that were specified in the contract. Two

 employees of the Company, Tommy Rea and Adam Whal, spoke with Defendant, and

 1 During the time period that the plumbing and HVAC work was being performed,

 Defendant was not residing at the property and the property was unoccupied.
 DAN KING V. HARRISON

 2022-NCCOA-27

 Opinion of the Court

 recommended that they install traditional tank-based water heaters instead.

 Defendant agreed, and the parties then entered into a modified oral agreement for

 the water heaters.

¶8 The modified agreement was memorialized in a written document, dated 7

 November 2017, which specified that the filtration system and re-piping work would

 remain the same, but the tankless water heater would be replaced with two 50-gallon,

 tank-based water heaters. The modified written agreement was $437 more than the

 original plumbing contract, and did not mention any warranties.

¶9 Defendant, however, denies having ever seen or signed the 7 November written

 agreement. He asserts that the discussion surrounding the tank-based water heaters

 was only an oral agreement, and was never presented with a new written contract for

 the plumbing work. He believes that his signature was forged on the 7 November

 document.

¶ 10 On the 7 November written agreement, there appears to be a second signature

 visible underneath Defendant’s. The Company asserts that Chad Cockerill, the

 employee who filled out and signed the 7 November written agreement, accidentally

 signed the agreement in the wrong place and used white-out to correct the mistake,

 and that Defendant then signed on top of Chad’s whited-out signature. Adam Whal

 maintains that he witnessed Defendant signing the new contract over the whited-out

 portion. At trial, the jury agreed with Defendant and found that the Company
 DAN KING V. HARRISON

 2022-NCCOA-27

 Opinion of the Court

 “superimpose[d] Mr. Harrison’s signature onto a document Mr. Harrison did not

 sign.”

¶ 11 Adam Whal returned to Defendant’s home on 8 November 2017 to conduct a

 final inspection and test of the completed plumbing work. The inspection revealed

 that all plumbing was functional; however, a 40-gallon tank heater had been installed

 upstairs and a 50-gallon tank heater had been installed downstairs—despite the fact

 that the amended agreement specified two 50-gallon heaters.

¶ 12 The Company also began work on the HVAC system during the first week of

 November 2017. The Company obtained a permit for the HVAC work on 3 November

 2017, and on this date the Company also completed an “Installation Excellence

 Checklist” regarding the HVAC work. The Checklist included a list of approximately

 50 tasks related to the HVAC work on the home, and indicated that all relevant

 HVAC tasks had been completed. However, according to the testimony of both

 Defendant and employees of the Company, the HVAC work had not, in fact, been

 completed as of 3 November 2017. Defendant asserts that none of the tasks were

 complete as of that date, while the Company maintains that some of the tasks were

 completed as of that date. It is unclear from the record when the HVAC work was

 actually completed, though it was completed at least by February 2018 when it passed

 inspection.

¶ 13 On 19 November 2017, Defendant emailed Paul Stefano a “punch list” listing
 DAN KING V. HARRISON

 2022-NCCOA-27

 Opinion of the Court

 several uncompleted plumbing and HVAC tasks, and expressing concern over the

 completeness of the re-piping work and the professionalism exhibited by the

 Company. On 30 November 2017, the Company returned to Defendant’s residence to

 conduct a final walkthrough of the plumping work, prior to inspection. The plumbing

 work passed County inspection on 4 December 2017. In February of 2018, the HVAC

 work passed County inspection. The Company visited Defendant’s residence several

 more times between 18 December 2017 and 3 July 2018 to complete various

 miscellaneous items the parties had contracted for, including the attic insulation.

¶ 14 On several occasions during 2018, Defendant hired or requested quotes from

 third-party contractors to complete or remediate some of the work performed by the

 Company, such as replacing one of the water heaters that had begun to leak. He

 chose to use third-parties, rather than contract any further with the Company or

 make a claim under the warranty, because their relationship had deteriorated and

 he did not trust the quality of their work. Defendant also personally registered the

 manufacturers’ warranties for the equipment purchased through the Company,

 contrary to his expectations.

¶ 15 When it came time to make payments, under the original two 2 November

 contracts, Defendant owed the Company $33,400. Under the 7 November amended

 contract, the amount due was slightly higher, $33,702.97. Defendant paid $30,000 of

 the amount due on 15 November 2017, via funds obtained from a third-party creditor.
 DAN KING V. HARRISON

 2022-NCCOA-27

 Opinion of the Court

 The Company calculated Defendant’s outstanding balance as the remaining

 $3,702.92, less a $227 difference crediting the cost of the 25 October visit to

 Defendant’s account, as the parties had agreed to. This amount was not paid by

 Defendant.

¶ 16 On 18 August 2018, the Company commenced a small claims action against

 Defendant in Mecklenburg County, requesting money owed for contractual services

 rendered. The magistrate dismissed the action with prejudice on 17 October 2018,

 finding that the Company had failed to prove the case by the greater weight of the

 evidence. The Company timely filed a notice of appeal to the District Court on 25

 October 2018.

¶ 17 On 14 November 2018, Defendant filed an answer denying all allegations in

 the complaint, and also filed a counterclaim against the Company, alleging various

 misrepresentations and contractual breaches. The Company replied, denied all of

 Defendant’s allegations, and moved to dismiss the countersuit on 17 December 2018.

 On 20 February 2019, Defendant moved to file an amended counterclaim. The

 District Court granted Defendant’s motion to amend on 29 March 2019. In his

 amended counterclaim, Defendant added claims for breach of contract, unfair and

 deceptive trade practices, fraud, and breach of the implied warranty of workmanship.

 The Company answered the amended counterclaim on 29 July 2019, substantially

 denying all allegations and raising a number of affirmative defenses.
 DAN KING V. HARRISON

 2022-NCCOA-27

 Opinion of the Court

¶ 18 On 3 September 2019, the Company moved for summary judgment and

 attorneys’ fees. On 20 December 2019, a summary judgment hearing was held before

 the Honorable Kimberley Y. Best. During this hearing, Defendant voluntarily

 dismissed the fraud counterclaim. On 7 January 2020, the trial court issued an order

 granting in part and denying in part the Company’s motion for summary judgment.

 The court awarded summary judgment to the Company with respect to one aspect of

 Defendant’s UDTP claim—namely, his claim that the Company had “[generated] the

 altered invoice reflecting a 4-ton unit versus a 5-ton unit”—but the court denied

 summary judgment with respect to the remainder of the parties’ claims and

 counterclaims.

¶ 19 A jury trial was held beginning on 18 February 2020, presided over by the

 Honorable Paulina Havelka. During trial, the court rejected a motion by Defendant

 to amend his counterclaim to include a UDTP claim for unfair debt collection

 practices by the Company, ruling that Defendant had not raised the issue properly

 prior to trial.

¶ 20 The trial concluded on 24 February 2020, and the jury returned a verdict in

 favor of Defendant on all breach of contract claims and findings of fact concerning the

 UDTP claims. The jury awarded Defendant damages in the amount of $15,572 for

 the breach of contract and $15,000 for injuries associated with the UDTP claims.

¶ 21 On 26 February 2020, an additional hearing was held before Judge Havelka,
 DAN KING V. HARRISON

 2022-NCCOA-27

 Opinion of the Court

 in order to determine whether the facts found by the jury amounted to UDTP as a

 matter of law. The court ultimately ruled that none of the jury’s findings amounted

 to unfair or deceptive trade practices, and dismissed all remaining claims with

 prejudice. Before the hearing adjourned, the parties also discussed the possibility of

 scheduling a further post-trial hearing to determine potential awards of attorneys’

 fees, but the fee hearing never occurred.

¶ 22 On 11 March 2020, the Company filed a motion requesting to set aside the

 jury’s verdict, and requesting to be heard on attorneys’ fees. Later that same day,

 the trial court entered its written judgment in favor of Defendant, awarding him

 damages of $15,572 plus interest on the breach of contract claims, in accord with the

 jury’s verdict. The judgment noted that none of the jury’s findings amounted to unfair

 or deceptive trade practices, and dismissed all of the parties’ remaining claims with

 prejudice.

¶ 23 On 3 April 2020 and 8 April 2020, the Company and Defendant, respectively,

 noticed appeal from the trial court’s judgment.

 II. Analysis

¶ 24 We first address Defendant’s appeal, and then proceed to discuss the

 Company’s appeal.

 A. Whether the Jury’s Findings Amounted to UDTP

¶ 25 Defendant first contends that the trial court erred by ruling that the jury’s
 DAN KING V. HARRISON

 2022-NCCOA-27

 Opinion of the Court

 findings of fact did not, as a matter of law, amount to unfair and deceptive trade

 practices. We agree with respect to the duplicate warranties claim, but disagree with

 respect to the forged signature and installation checklist claims. We accordingly

 affirm in part and remand in part.

¶ 26 Under North Carolina law, a consumer may bring a private cause of action

 against businesses who engage in unfair and deceptive trade practices. See N.C. Gen.

 Stat. § 75-1.1 (2019). The statute is intended to “provide consumers with a remedy

 for injuries done to them by dishonest and unscrupulous business practices.” Hester

 v. Hubert Vester Ford, Inc., 239 N.C. App. 22, 30, 767 S.E.2d 129, 136 (2015).

¶ 27 “In order to establish a violation of N.C.G.S. § 75-1.1, a plaintiff must show:

 (1) an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) which

 proximately caused injury to plaintiffs.” Gray v. N. Carolina Ins. Underwriting Ass’n,

 352 N.C. 61, 68, 529 S.E.2d 676, 681 (2000). Ordinarily, in a UDTP case, the jury will

 determine the facts of the case, and the trial court, “based on the jury’s findings, then

 determines, as a matter of law, whether the defendant engaged in unfair or deceptive

 practices in or affecting commerce.” Id. This Court reviews the trial court’s

 conclusions of law on unfair or deceptive trade practices de novo. See Terry’s Floor

 Fashions, Inc. v. Crown Gen. Contractors, Inc., 184 N.C. App. 1, 21, 645 S.E.2d 810,

 823 (2007).

¶ 28 This case requires us to examine two corollary doctrines under our UDTP
 DAN KING V. HARRISON

 2022-NCCOA-27

 Opinion of the Court

 caselaw—the “aggravating circumstances” doctrine, and the “reliance” doctrine. The

 first doctrine comes into play when a plaintiff’s UDTP claim is centered around the

 defendant’s breach of a contract. Our courts have long held that a mere breach of

 contract, standing alone, is not sufficient to maintain a UDTP claim. See, e.g., Branch

 Banking & Tr. Co. v. Thompson, 107 N.C. App. 53, 62, 418 S.E.2d 694, 700 (1992)

 (“[A] mere breach of contract, even if intentional, is not sufficiently unfair or deceptive

 to sustain an action under N.C.G.S. § 75-1.1.”).

¶ 29 When a plaintiff alleges a UDTP violation based upon a breach of contract, the

 plaintiff “must show substantial aggravating circumstances attending the breach to

 recover under the Act[.]” Id. (internal marks and citation omitted). Tortious conduct

 must be shown. “Fraud or deception” can constitute aggravating circumstances,

 when it rises to the level of a practice that is “immoral, unethical, oppressive,

 unscrupulous, or substantially injurious to consumers.” Supplee v. Miller-Motte Bus.

 Coll., Inc., 239 N.C. App. 208, 230-31, 768 S.E.2d 582, 598-99 (2015).

¶ 30 The second doctrine—the reliance doctrine—holds that in order to satisfy

 proximate cause, a plaintiff must demonstrate that they detrimentally relied on the

 defendant’s alleged misrepresentation or deception in order to recover under the

 statute. See DC Custom Freight, LLC v. Tammy A. Ross & Assocs., Inc., 273 N.C.

 App. 220, 233, 848 S.E.2d 552, 562 (2020); Pearce v. Am. Defender Life Ins. Co., 316

 N.C. 461, 471, 343 S.E.2d 174, 180 (1986). Reliance, in turn, is comprised of two
 DAN KING V. HARRISON

 2022-NCCOA-27

 Opinion of the Court

 factors—actual reliance and reasonableness. Bumpers v. Cmty. Bank of N. Virginia,

 367 N.C. 81, 89, 747 S.E.2d 220, 227 (2013). The first element—actual reliance—

 requires a showing that “the plaintiff [] affirmatively incorporated the alleged

 misrepresentation into his or her decision-making process: if it were not for the

 misrepresentation, the plaintiff would likely have avoided the injury altogether.” Id.

 at 90, 747 S.E.2d at 227. In other words, the plaintiff must have “acted or refrained

 from acting in a certain manner due to the defendant’s representations.” Williams v.

 United Cmty. Bank, 218 N.C. App. 361, 368, 724 S.E.2d 543, 549 (2012 (internal

 marks and citation omitted). The second element—reasonableness—requires a

 showing that the plaintiff’s reliance on the defendant’s “allegedly false

 representations [was] reasonable.” Bumpers, 367 N.C. at 90, 747 S.E.2d at 227. A

 plaintiff’s reliance is not reasonable when “the plaintiff could have discovered the

 truth of the matter through reasonable diligence, but failed to investigate.” Id.

¶ 31 Here, Defendant contends that the Company committed UDTP in three

 respects: (1) by superimposing Mr. Harrison’s signature on the amended contract; (2)

 by selling him duplicate warranties; and (3) by misrepresenting the completeness of

 the work via the installation checklist. The Company, in response, argues that

 Defendant has no UDTP claim because is unable to show that he detrimentally relied

 on any purported misrepresentation by the Company, and because he is unable to

 show that the Company’s conduct rose to the level of aggravating circumstances.
 DAN KING V. HARRISON

 2022-NCCOA-27

 Opinion of the Court

¶ 32 With respect to the superimposition of the signature, we affirm, as Defendant

 cannot show actual reliance. With respect to the installation checklist, we also affirm,

 as Defendant cannot show injury. However, with respect to the asserted fraud in

 duplicate warranties, we remand for further fact-finding regarding the

 reasonableness of Defendant’s reliance.

 1. Superimposition of Defendant’s Signature

¶ 33 Defendant first argues that the Company committed UDTP by superimposing

 his signature on 7 November contract. To review, Defendant and the Company

 entered into a contract for the plumbing work on his home on 2 November 2017.

 Several days later, after the Company had begun work on the project, unanticipated

 difficulties arose with the installation of the tankless water heater. So, Defendant

 and the Company reached an oral agreement to install two 50-gallon, tank-based

 water heaters in place of the tankless water heater. The Company then created a

 new written contract on 7 November 2017, which contained two key differences—a

 $437 difference in the contractual cost, and a provision for the installation of two 50-

 gallon, tank-based heaters. However, Defendant testified that he was never

 presented with the 7 November contract (at least until after this litigation began),

 and maintains that his signature on the contract was forged. The jury sided with

 Defendant and found that his signature had been superimposed on the 7 November

 contract.
 DAN KING V. HARRISON

 2022-NCCOA-27

 Opinion of the Court

¶ 34 We must now address whether these actions amounted to UDTP, above and

 beyond a mere breach of contract. The first element of a UDTP claim requires proof

 that the business engaged in “an unfair or deceptive trade practice.” A practice is

 deceptive when “it has the capacity or tendency to deceive.” Walker v. Fleetwood

 Homes of N. Carolina, Inc., 362 N.C. 63, 72, 653 S.E.2d 393, 399 (2007). The act of

 signing someone else’s name to a document without their authorization constitutes

 an act with the capacity to deceive, thus satisfying the first element. The second

 element of a UDTP claim requires proof that the conduct was “in or affecting

 commerce,” and both parties here agree that a contract for plumbing services satisfies

 this element.

¶ 35 The third element of a UDTP claim requires proof that the unfair or deceptive

 acts “proximately caused injury” to the plaintiff. As explained above, our courts have

 interpreted this proximate cause element as requiring proof of detrimental reliance

 by the plaintiff—reliance which causes injury, and which is both actual and

 reasonable. As for actual reliance, Defendant here must show that he incorporated

 the Company’s misrepresentation into his decision-making process, or that he “acted

 or refrained from acting in a certain manner” due to the Company’s deceptive acts.

 Williams, 218 N.C. App. at 368, 724 S.E.2d at 549. As for reasonable reliance,

 Defendant must show that his reliance on the company’s deceptive acts was

 reasonable. Both of these inquiries require “examin[ing] the mental state of the
 DAN KING V. HARRISON

 2022-NCCOA-27

 Opinion of the Court

 plaintiff.” Bumpers, 367 N.C. at 89, 747 S.E.2d at 227.

¶ 36 The Company argues that Defendant cannot show actual reliance because,

 according to his own admission, Defendant “never saw the 7 November Plumbing

 Contract until approximately twelve to fourteen months after he initially met with

 [the Company].” Accordingly, because Defendant never received the allegedly forged

 contract until long after the work was completed, he could not have relied upon its

 contents to his detriment—i.e., he could not have relied upon a document that he did

 not know existed.

¶ 37 Defendant, in contrast, appears to argue that he detrimentally relied upon the

 price and terms that the Company provided to him in the original contract—and that

 the damage he suffered was reflected in the increased price of the second (forged)

 contract, and the installation of different equipment than he had originally

 contracted for.

¶ 38 We agree with the Company that this set of facts does not ultimately amount

 to UDTP. Even if we accept as fact that the Company forged the second contract,

 Defendant still cannot show that he actually relied on this misrepresentation by the

 company. A helpful precedent here is Fazzari v. Infinity Partners, LLC, 235 N.C.

 App. 233, 762 S.E.2d 237 (2014). In that case, a planned subdivision development

 failed after the properties were significantly over-appraised in representations made

 to lenders. Id. at 234-36, 762 S.E.2d at 238-39. The plaintiffs (who had all purchased
 DAN KING V. HARRISON

 2022-NCCOA-27

 Opinion of the Court

 lots in the planned subdivision) brought suit against the developers for UDTP,

 claiming that they relied on misrepresentations by the developer and appraisers “in

 making their decisions to take out the loans on which they later defaulted.” Id. at

 244, 762 S.E.2d at 244. On appeal, we held that the trial court had properly denied

 summary judgment to the plaintiff purchasers, as they were unable to demonstrate

 they actually relied on the deceptive appraisals. Id. at 243, 762 S.E.2d at 243.

¶ 39 We noted that the plaintiffs had testified that the developer “did not make any

 misrepresentations to them in regard to their loans[,]” apart from stating that the

 development project “should do well” and was “the real deal.” Id. at 244, 762 S.E.2d

 at 244 (internal marks omitted). More importantly, even if these puffering or

 noncommittal statements “could be construed as factual misrepresentations,” these

 remarks were not made until after the plaintiffs had already purchased their lots—

 and so the plaintiffs could not have relied on these statements. Id.

¶ 40 Likewise, with regard to the over-appraisal of the lots, we similarly concluded

 that no actual reliance was shown. See id. at 245, 762 S.E.2d at 244. We summed

 up the evidence as follows:

 the plaintiffs were purchasers of lots in [a] real estate
 investment scheme in which [the appraiser] appraised a
 large number of lots at an identical, inflated value to meet
 the loan-to-value conditions required to obtain bank loans.
 The scheme . . . involved contracts that promised
 repurchase of lots with a guaranteed profit for the
 investors. [However], the development was never
 DAN KING V. HARRISON

 2022-NCCOA-27

 Opinion of the Court

 completed, and investors were left with large loans and lots
 worth only a fraction of their appraised values.

 Id. (internal marks and citations omitted).

¶ 41 Despite this unsavory behavior by the developers and appraisers, we

 nevertheless held that the plaintiffs could not show actual reliance because “[a]ll of

 the evidence show[ed] that the plaintiffs made their decisions to invest in the

 development and contracted to do so without any awareness of, much less reliance

 on, the appraisals.” Id. This is because the misleading appraisals did not occur until

 after the plaintiffs had already signed their purchase contracts. Id. Thus, we

 concluded that the plaintiffs “cannot have relied on information they did not see and

 did not know existed (some of which did not, in fact, yet exist) at the time of their

 decisions.” Id., 762 S.E.2d at 245. Accordingly, in light of the plaintiffs’ “inability to

 show either misrepresentations [by the developers] or reliance on the allegedly

 negligent appraisals,” we held that the trial court properly denied their UDTP claims.

 Id. at 246-47, 762 S.E.2d at 245.

¶ 42 Here, like the plaintiffs in Fazzari, Defendant likewise attempts to base his

 UDTP claim on a deceptive act of which he had no awareness at the time he made his

 contractual decision. Defendant testified that he did not learn of the existence of the

 7 November contract (with the forged signature) until twelve to fourteen months after

 he had initially met with the Company—long after he signed the first contract, and
 DAN KING V. HARRISON

 2022-NCCOA-27

 Opinion of the Court

 long after the work had been completed. Thus, as in Fazzari, we conclude that

 Defendant could not have detrimentally relied on information which he did not know

 existed at the time of his decision, and that Defendant cannot satisfy the actual

 reliance element of his UDTP claim.2 The trial court accordingly did not err in

 concluding that the forged signature on the second contract did not constitute UDTP.

 2. Sale of Duplicate Warranties

¶ 43 Defendant next argues that the Company committed UDTP by selling him

 duplicate warranties for the plumbing and HVAC work—in essence, arguing that the

 Company duplicitously sold him warranties that he automatically received from the

 product manufacturer at the time of purchase. To review, as part of the 2 November

 contract, the Company sold Defendant two relevant warranties: (1) a warranty for

 the tankless water heater for “10 years parts, 5 years media, and 2 years labor,” and

 (2) a warranty for the HVAC equipment for “12 years parts & labor” and “one year

 maintenance.” However, evidence was presented at trial showing that the HVAC

 2 Even if we were to accept Defendant’s theory of the case—that the original 2
 November contract was the source of the misrepresentation, in that he detrimentally relied
 upon the price and terms that the Company provided to him in this first contract—
 Defendant’s UDTP claim still fails. As we have previously explained, “[a] broken promise,
 standing alone, is not enough to establish a UDTP claim, unless the evidence shows the
 promisor intended to break its promise at the time that it made the promise.” Hills Mach.
 Co., LLC v. Pea Creek Mine, LLC, 265 N.C. App. 408, 421, 828 S.E.2d 709, 718 (2019) (internal
 marks and citation omitted). Here, Defendant has presented no evidence showing that, at
 the time of the 2 November contract, the Company intended to break its promise to install
 the tankless water heater or intended to deviate from the originally agreed-upon price.
 DAN KING V. HARRISON

 2022-NCCOA-27

 Opinion of the Court

 equipment which Defendant purchased already came with an included 10-year parts

 warranty from the manufacturer.

¶ 44 During trial, Defendant testified that he was not informed about the existence

 of the manufacturer’s warranty at the time of the 2 November contract, and that he

 was “unaware at that time that [the Company’s] warranties ran concurrently with

 the manufacturer’s warranty.” Defendant maintained, that by including the

 manufacturer warranty as part of the purchase price, the Company had

 misrepresented what it was selling to him. The jury sided with Defendant, and

 concluded in its findings of fact that “Dan King [sold] Mr. Harrison duplicate

 warranties.”

¶ 45 We now address whether these actions amounted to UDTP. The sale of

 duplicate warranties may constitute an act which has the tendency to deceive, and

 which occurs in or affecting commerce. It is the third element of UDTP that is in true

 contention here—i.e., whether or not Defendant suffered injury due to the Company’s

 misrepresentations by detrimentally relying on any duplicity in the warranties.

¶ 46 We note that under this aspect of Defendant’s UDTP claim, the aggravating

 circumstances doctrine is not triggered. As explained above, this doctrine holds that

 a “mere breach of contract, even if intentional, is not sufficiently unfair or deceptive

 to sustain an action under N.C.G.S. § 75-1.1”—thus, when a plaintiff’s UDTP claim

 stems from a breach, the plaintiff must show aggravating circumstances in order to
 DAN KING V. HARRISON

 2022-NCCOA-27

 Opinion of the Court

 recover. Thompson, 107 N.C. App. at 62, 418 S.E.2d at 700. However, the duplicate

 warranties claim here does not stem from a breach of contract by the Company—

 rather, it is based on the idea that selling a warranty while withholding information

 regarding the existence of other applicable warranties with potentially overlapping

 coverage constitutes an UDTP. This scenario is distinct from the traditional

 aggravating circumstances and breach analysis, because it does not center around

 any contractual obligation that the Company failed to perform.

¶ 47 Under the first element of reliance, Defendant must show that he actually

 relied on the misrepresentation—that, but for the Company’s actions, he would have

 “acted or refrained from acting in a certain manner.” Williams, 218 N.C. App. at 368,

 724 S.E.2d at 549. Here, we conclude that this element is satisfied because the

 Company did not disclose or identify the fact that these products carried pre-included

 manufacturer warranties, and because Defendant testified that he would not have

 purchased the warranty from the Company had he known that the HVAC products

 already came with an included manufacturer warranty.

¶ 48 Under the second element of reliance, Defendant must show that his reliance

 on the Company’s misrepresentation was reasonable. Bumpers, 367 N.C. at 90, 747

 S.E.2d at 227. Reliance is not reasonable when “the plaintiff could have discovered

 the truth of the matter through reasonable diligence, but failed to investigate.” Id.

¶ 49 The Company argues that Defendant’s reliance on the warranties was not
 DAN KING V. HARRISON

 2022-NCCOA-27

 Opinion of the Court

 reasonable because he failed to perform due diligence before signing the contract.

 The Company contends that Defendant should have researched the products that he

 was purchasing before he signed the contract, in which case he would have discovered

 that certain products had pre-included manufacturer’s warranties. Moreover, the

 Company maintains that it is common knowledge that many HVAC products carry

 manufacturer’s warranties.

¶ 50 Defendant, in response, argues that his reliance was reasonable because this

 was a transaction between a professional HVAC company and a layperson.

 Defendant contends that it would be unfair and irrational to hold that a consumer of

 HVAC or plumbing services must independently research every single product set to

 be installed in their home in order to determine whether the business they are

 contracting with might be selling them a duplicate warranty. Defendant contends

 that the existence of manufacturer warranties tied to certain HVAC parts is far from

 common knowledge, and that in this scenario he acted perfectly reasonably in relying

 on the Company’s assurances regarding the warranties it sold.

¶ 51 In explaining the concept of “reasonable diligence,” we have previously held

 that “a plaintiff cannot simply ignore facts which should be obvious to him or would

 be readily discoverable upon reasonable inquiry.” S.B. Simmons Landscaping &

 Excavating, Inc. v. Boggs, 192 N.C. App. 155, 162, 665 S.E.2d 147, 151 (2008). On

 the other hand, we also think it true that a layperson consumer should not be held to
 DAN KING V. HARRISON

 2022-NCCOA-27

 Opinion of the Court

 the same standard of due diligence as a sophisticated commercial entity. See DC

 Custom Freight, 273 N.C. App. at 233, 848 S.E.2d at 562 (holding that it was

 unreasonable for the plaintiff, “a sophisticated business” specializing in trucking, to

 simply assume, without investigation, that the trucks it rented from the defendant

 were covered under the defendant’s insurance policy).

¶ 52 Here, we are unable to determine based on the record whether Defendant

 would have discovered the existence of the duplicate warranties through reasonable

 diligence at the time of the original contract, and we do not have the benefit of any

 jury findings on this issue. During trial, no evidence was presented regarding

 whether the existence of HVAC manufacturer warranties is considered “common

 knowledge” (especially to a layperson); no evidence was presented regarding how it

 was that Defendant ultimately came to discover the existence of the manufacturer

 warranties; and no evidence was presented regarding whether it was a common

 practice in the HVAC industry to sell parts warranties for products that were already

 covered by a manufacturer warranty.

¶ 53 It is relevant whether Plaintiff provided new, additional, or extended

 warranties beyond those provided by the manufacturer. For example, if the

 manufacturer’s warranties were for parts only or limited to a stated time, and

 Plaintiff extended those times, added maintenance or repair of excluded items or

 provided labor, these would be separate and independent warranties beyond what
 DAN KING V. HARRISON

 2022-NCCOA-27

 Opinion of the Court

 the manufacturer provided and would not be duplicative. It is also relevant that

 Plaintiff provided a warranty as a member of the local community resulting in

 Defendant obtaining a more ready source for the resolution of any problems. “Though

 the risk to [Plaintiff’s] separate assets may have been slight, said risk is

 consideration.” Poythress v. Poythress, 2021-NCCOA-589, ¶ 16 (citing Young v.

 Johnston Cnty., 190 N.C. 52, 57, 128 S.E. 401, 403 (1925) (“The slightest

 consideration is sufficient to support the most onerous obligation; the inadequacy, as

 has been said, is for the parties to consider at the time of making the agreement, and

 not for the court when it is sought to be enforced.”)). Accordingly, we remand for

 further fact-finding on the issue of Defendant’s reasonable diligence in discovering

 the existence and coverage of the duplicate warranties.3

 3. Installation Checklist

¶ 54 Finally, Defendant argues that the Company committed UDTP by filling out

 an “Installation Excellence Checklist” indicating that it had completed all work on

 the project, when in fact much of that work had yet to be completed. To review, on 3

 November 2017 an employee of the Company filled out and signed the checklist,

 which contains over three pages of specific plumbing and HVAC tasks related to the

 3 The Company also argues that Defendant’s UDTP claims are barred by the economic

 loss rule. As the Company cites no relevant, binding precedent to show that the economic
 loss rule applies in the context of UDTP claims, we decline to address this argument.
 DAN KING V. HARRISON

 2022-NCCOA-27

 Opinion of the Court

 project. The Checklist contains the following representation: “I certify all of the items

 that have been checked are either complete or not applicable to this work site.” It is

 undisputed that the majority of the tasks listed on the Checklist had not been

 completed by 3 November 2017. In fact, 3 November 2017 was the day that the

 Company first obtained the work permits and began work on Defendant’s home, and

 the evidence showed that it was unfeasible that a project of this scope could have been

 completed in a single day.

¶ 55 We now address whether these actions amounted to UDTP. As with the forged

 signature claim, it is clear that Defendant can easily satisfy the first two elements of

 UDTP. The creation of a construction checklist that falsely represents the status of

 the Company’s work on the project is an act which has the tendency to deceive and

 that occurs in or affecting commerce. It is part of the third element of UDTP that is

 in contention—i.e., whether or not Defendant suffered injury due to this

 misrepresentation.

¶ 56 The Company contends that Defendant suffered no injury stemming from the

 checklist because the Company continued its work on the project for several more

 months after the checklist was created, and that the end result was a functional

 HVAC and plumbing system that passed state inspection. Defendant contends that

 he was injured because the checklist contained misrepresentations about the true

 circumstances and completeness of the project.
 DAN KING V. HARRISON

 2022-NCCOA-27

 Opinion of the Court

¶ 57 Here, we agree with the Company that Defendant has not produced sufficient

 evidence that he was injured by the existence of this document. We have previously

 defined legal injury as “a wrongful act which causes loss or harm to another.” Heron

 Bay Acquisition, LLC v. United Metal Finishing, Inc., 245 N.C. App. 378, 384, 781

 S.E.2d 889, 894 (2016) (citations omitted). Defendant has failed to produce any

 evidence of a harm or loss that he suffered as a result of this checklist—it caused him

 no monetary or economic injury, it did not cause any delay in the completion of the

 work, nor any lessening of the quality of the work. Moreover, it is not clear from the

 record when Defendant even discovered the existence of this checklist. As stated

 above, a person cannot detrimentally rely on a document he did not know existed.

 Accordingly, we conclude that Defendant cannot meet all elements of a UDTP claim

 and that the trial court did not err in ruling against him on this issue.

 B. Denial of the Motion to Amend

¶ 58 Defendant next argues that the trial court erred by refusing to allow him to

 amend his counterclaim to introduce a collection notice that was sent to him as a

 result of the Company’s debt collection practices, which he asserts amounted to

 UDTP. We disagree, and hold Defendant has failed to show the trial court abused its

 discretion in refusing to allow the amendment.

¶ 59 Following Defendant’s failure to pay the remaining balance on the plumbing

 and HVAC contracts, the Company sent his bill to an outside collections company.
 DAN KING V. HARRISON

 2022-NCCOA-27

 Opinion of the Court

 The collections company sent Defendant a collection notice on 5 June 2019. However,

 Defendant’s amended counterclaim, which was filed on 29 March 2019, did not

 mention the collections notice as the basis of any potential claim. The Company then

 filed its motion for summary judgment on 3 September 2019. At the summary

 judgment hearing on 20 December 2019, Defendant argued (for the first time) that

 the issuance of the collection notice amounted to UDTP, and identified the collection

 notice as a potential trial exhibit.

¶ 60 During trial, Defendant attempted to introduce the collection notice. The

 Company objected to the introduction of the collection notice and any associated

 testimony, asserting that it had not received sufficient notice of this new claim. The

 trial court similarly expressed its concern that the collections issue had not been

 included in Defendant’s pleadings. Ultimately the trial court’s ruling precluded

 Defendant from introducing the collection notice or from discussing any collection

 attempts—reasoning that introducing this evidence this late into the litigation would

 amount to bringing a new claim, of which the Company did not receive proper notice.

¶ 61 Defendant had attempted to introduce this collections evidence because he

 believed it amounted to an additional unfair and deceptive act by the Company, which

 would bolster his UDTP claim. Under our General Statutes, a debt collector can be

 held liable for attempting to collect a debt by contacting the adverse party directly,

 when the collector knows that the adverse party is represented by counsel. See N.C.
 DAN KING V. HARRISON

 2022-NCCOA-27

 Opinion of the Court

 Gen. Stat. §§ 75-55(3), 58-70-115(3) (2019). Defendant argued that the Company

 violated this law by having the collections agency contact him directly, when they

 knew he was represented by an attorney.

¶ 62 Regardless of the potential merit of Defendant’s claims, we conclude that the

 trial court did not err in refusing to admit the collections evidence. We review the

 trial court’s evidentiary rulings—including rulings on a motion to amend—for abuse

 of discretion. Fintchre v. Duke Univ., 241 N.C. App. 232, 239, 773 S.E.2d 318, 323

 (2015). An abuse of discretion is as a “ruling [] so arbitrary that it could not have

 been the result of a reasoned decision[.]” Ferguson v. DDP Pharmacy, Inc., 174 N.C.

 App. 532, 535, 621 S.E.2d 323, 326 (2005) (internal marks and citation omitted).

¶ 63 Amendment of pleadings is governed by Rule 15 of the North Carolina Rules

 of Civil Procedure, which provides in pertinent part that “[a] party may amend his

 pleading once as a matter of course at any time before a responsive pleading is

 served.” N.C. Gen. Stat. §1A-1, Rule 15(a) (2019). However, after a party makes their

 amendment as a matter of course, further amendments are allowed “only by leave of

 court or by written consent of the adverse party.” Id. Moreover,

 [i]f evidence is objected to at trial on the ground that it is
 not within the issues raised by the pleadings, the court may
 allow the pleadings to be amended and shall do so freely
 when the presentation of the merits of the action will be
 served thereby and the objecting party fails to satisfy the
 court that the admission of such evidence would prejudice
 him in maintaining his action or defense upon the merits.
 DAN KING V. HARRISON

 2022-NCCOA-27

 Opinion of the Court

 Id., Rule 15(d).

¶ 64 In adjudicating a party’s motion to amend, the trial court abuses its discretion

 when it “refuses to allow an amendment” without providing any “justifying reason for

 denying the motion to amend.” Ledford v. Ledford, 49 N.C. App. 226, 233, 271 S.E.2d

 393, 398 (1980). In contrast, a trial court acts properly in denying a motion to amend

 for reasons of “(a) undue delay, (b) bad faith, (c) undue prejudice, (d) futility of

 amendment, and (e) repeated failure to cure defects by previous amendments.”

 Strickland v. Lawrence, 176 N.C. App. 656, 666-67, 627 S.E.2d 301, 308 (2006)

 (internal marks and citation omitted).

¶ 65 When a trial court denies a party’s motion to amend based on undue delay,

 “the trial court may consider the relative timing of the proposed amendment in

 relation to the progress of the lawsuit.” Id. at 667, 627 S.E.2d at 308. For example,

 in Strickland we held that the trial court did not abuse its discretion in denying the

 plaintiffs’ motion to amend to add a new claim, because of undue delay by the

 plaintiffs. Id. We noted that the plaintiffs’ motion “was filed seven months after the

 institution of their action,” and that at that point discovery had almost entirely

 concluded. Id. Similarly, in Wilkerson v. Duke Univ., 229 N.C. App. 670, 679, 748

 S.E.2d 154, 161 (2013), we held that the trial court did not abuse its discretion in

 denying the plaintiff’s motion to amend to add three additional claims, because of

 both undue delay and prejudice. We noted that the defendant had received no notice
 DAN KING V. HARRISON

 2022-NCCOA-27

 Opinion of the Court

 of the three additional claims, and that the motion to amend was made “thirteen

 months after [the plaintiff] filed the initial complaint and only five days before the

 [summary judgment] hearing” was set to begin. Id.

¶ 66 In the present case, we likewise conclude that the trial court did not abuse its

 discretion in denying Defendant’s motion to amend. During trial, the court engaged

 in extensive discussion with Defendant and the Company regarding the potential

 amendment of Defendant’s pleadings to add the new collections claim. When

 Defendant asked whether a motion to amend would be permitted, the trial court

 responded “[n]ot in the middle of trial, no.” When Defendant went on the argue that

 he could not have possibly included this claim in his original amended counterclaim

 because the collection notice was not sent until after the filing of the counterclaim,

 the court noted that it likely “would have allowed [Defendant] to amend the

 [counterclaim]” at an earlier date “since [Defendant] did not learn of [the collection

 notice] until after the discovery process,” but that the court could not imagine

 allowing the amendment “midway after we started the trial.”

¶ 67 The trial court’s reasoning here is apt—while it is true that the collections

 notice was not sent until 5 June 2019, after Defendant’s amended counterclaim had

 already been filed, this does not change the fact that Defendant was aware of the

 existence of the collections notice all throughout the summer and fall of 2019 but

 failed to take any action to add this claim to the litigation. The first occasion that
 DAN KING V. HARRISON

 2022-NCCOA-27

 Opinion of the Court

 Defendant brought this collections issue to the trial court’s attention was at the

 summary judgment hearing on 20 December 2019, and Defendant did not move to

 amend his pleadings to include this new claim until trial had already begun in

 February 2020. Thus, we conclude that the trial court did not abuse its discretion by

 denying Defendant’s motion for leave to amend his complaint in the middle of trial.

 C. Directed Verdict on Breach of Contract Claims

¶ 68 We now turn to the issues raised by the Company in its cross-appeal. The

 Company first argues that the trial court erred in failing to grant a directed verdict

 on Defendant’s breach of contract claims. We agree in part, and remand for a new

 trial on Defendant’s claim for failure to perform in a workmanlike manner under a

 construction or building contract.

¶ 69 To review, Defendant argued at trial that the Company committed a breach of

 contract in three main respects: (1) by installing different equipment than was

 originally called for (such as the water heaters); (2) by charging a higher price than

 was originally called for; and (3) by performing substandard work, such as on the re-

 piping and insulation projects. During trial, the Company moved for a directed

 verdict at the close of all the evidence, and the trial court heard extensive arguments

 from both parties regarding whether the breach of contract claims should go to the

 jury. The trial court ultimately denied the Company’s motion, concluding that there

 was sufficient evidence presented that would allow the jury to reach their own
 DAN KING V. HARRISON

 2022-NCCOA-27

 Opinion of the Court

 conclusions on whether the contract had been breached.

¶ 70 Following the close of all evidence during a jury trial, a party may move for a

 directed verdict in order to “test[] the sufficiency of the evidence to support a verdict

 for the non-moving party.” Williams v. CSX Transp., Inc., 176 N.C. App. 330, 344,

 626 S.E.2d 716, 728 (2006). If the trial court allows the motion for directed verdict,

 judgment is awarded in favor of the moving party and the matter will not be decided

 by the jury—however, if the trial court denies the motion, then the case moves

 forward to be decided by the jury. See N.C. Gen. Stat. § 1A-1, Rule 6(a) (2019).

¶ 71 “In reviewing a direct verdict, this Court must determine whether the

 evidence taken in the light most favorable to the non-moving party is sufficient as a

 matter of law to be submitted to the jury.” Delta Env’t Consultants of N. Carolina,

 Inc. v. Wysong & Miles Co., 132 N.C. App. 160, 168, 510 S.E.2d 690, 695 (1999). On

 appeal, we conduct a de novo review of a trial court’s denial of a motion for directed

 verdict. Denson v. Richmond Cnty., 159 N.C. App. 408, 411, 583 S.E.2d 318, 320

 (2003).

¶ 72 We first address the Company’s claim that the trial court should have issued

 a directed verdict as to Defendant’s claim that the Company performed substandard

 work on the re-piping and insulation projects. The Company’s primary argument

 here is that, as a matter of law, Defendant’s evidence could not have been sufficient

 to survive a motion for directed verdict because he did not present any expert
 DAN KING V. HARRISON

 2022-NCCOA-27

 Opinion of the Court

 testimony showing that the Company’s work was substandard. During trial, the only

 evidence presented by Defendant tending to show substandard work by the Company

 was Defendant’s own testimony about the quality of the work and photos that

 Defendant had taken of the work.

¶ 73 “To state a claim for breach of contract, the complaint must allege that a valid

 contract existed between the parties, that defendant breached the terms thereof, the

 facts constituting the breach, and that damages resulted from such breach.” Jackson

 v. Associated Scaffolders & Equip. Co., 152 N.C. App. 687, 692, 568 S.E.2d 666, 669

 (2002). In actions for breach of building or construction contracts, a plaintiff may

 bring a claim for “failure to construct in a workmanlike manner.” Cantrell v. Woodhill

 Enters., Inc., 273 N.C. 490, 497, 160 S.E.2d 476, 481 (1968). Under such a claim,

 “[t]he law recognizes an implied warranty that the contractor or builder will use the

 customary standard of skill and care” based upon the particular industry, location,

 and timeframe in which the construction occurs. Kenney v. Medlin Const. & Realty

 Co., 68 N.C. App. 339, 343, 315 S.E.2d 311, 314 (1984). When pleading this claim,

 “plaintiff’s pleading should allege wherein the workmanship was faulty or the

 material furnished by defendant was not such as the contract required.” Cantrell,

 273 N.C. at 497, 160 S.E.2d at 481 (internal marks and citation omitted).

¶ 74 The Company contends that, in order to bring a proper claim for failure to

 construct in a workmanlike manner, the plaintiff must put on expert testimony to
 DAN KING V. HARRISON

 2022-NCCOA-27

 Opinion of the Court

 establish the relevant standard of care. Defendant contends that no such

 requirement exists, as the quality of the work is an issue that can be properly

 determined by the jury without the aid of an expert. On balance, we agree with the

 Company that at least some expert evidence must be presented to sustain a claim

 such as this.

¶ 75 We find two cases to be most instructive on this issue. First, in Kenney v.

 Medlin Const. & Realty Co., 68 N.C. App. 339, 341, 315 S.E.2d 311, 313 (1984), we

 addressed a breach of contract action in which the plaintiff homeowner sued the

 defendant builder for failure to construct in a workmanlike manner when building

 the plaintiff’s new home. Plaintiff retained two experts to testify regarding the

 structural problems with the home, and both testified that “the construction of

 plaintiff’s house did not meet the standard of workmanlike quality prevailing in

 Cabarrus County in December, 1978.” Id. at 340, 315 S.E.2d at 312. On appeal, the

 defendant argued that the testimony of the two witnesses was inadmissible because

 they were not sufficiently qualified, but we disagreed. Id. at 342, 315 S.E.2d at 313.

¶ 76 We noted that “opinion testimony of an expert witness is admissible if there is

 evidence that the witness is better qualified than the jury to form such an opinion.”

 Id. Given that one of the witnesses had “built most of the houses in plaintiff’s

 subdivision,” and that the other “had been involved in building more than 200

 residences,” we held that both witnesses qualified as experts who were “better
 DAN KING V. HARRISON

 2022-NCCOA-27

 Opinion of the Court

 qualified than the jury to form an opinion as to the quality of the workmanship” on

 the home. Id. at 342-43, 315 S.E.2d at 313-14. Moreover, in evaluating whether the

 trial court properly denied the defendant’s motion for directed verdict, we held that

 there was “plenary evidence supporting plaintiff’s claim of breach”—given that “two

 expert witnesses testified to the various structural defects rendering the quality of

 construction of plaintiff’s house below the standard prevailing in the area.” Id. at

 343, 315 S.E.2d at 314.

¶ 77 Second, in Delta Env’t Consultants of N. Carolina, Inc. v. Wysong & Miles Co.,

 132 N.C. App. 160, 163, 510 S.E.2d 690, 692 (1999), the defendant (a factory owner)

 hired the plaintiff (an environmental consultant) to help the factory deal with

 pollution and soil contamination. The plaintiff sued the defendant for unpaid bills,

 and the defendant counter-claimed that the plaintiff had breached the contract by

 “fail[ing] to perform its remedial work to the level of skill ordinarily exercised by

 members of its profession.” Id. During trial, the defendant apparently put on no

 expert testimony to prove its workmanship claim, and as a result the trial court

 granted a directed verdict in favor of plaintiff, ruling that defendant’s “failure to offer

 expert testimony made its evidence insufficient to prove the standard of care owed by

 [plaintiff] as a matter of law.” Id. at 168, 510 S.E.2d at 695.

¶ 78 On appeal, the defendant challenged this ruling by the trial court, arguing that

 under the “common knowledge” exception, it need not introduce expert testimony to
 DAN KING V. HARRISON

 2022-NCCOA-27

 Opinion of the Court

 prove its workmanship claim. Id. This exception holds that “where the common

 knowledge and experience of the jury is sufficient to evaluate compliance with a

 standard of care, expert testimony is not needed.” Id. However, we disagreed with

 the defendant, concluding that a case such as this fell far outside the bounds of the

 common knowledge exception. Id. We explained that this exception was reserved for

 cases where the complained-of professional conduct “is so grossly negligent that a

 layperson’s knowledge and experience make obvious the shortcomings of the

 professional”—such as a medical malpractice case in which “an open wound was not

 cleansed or sterilized” before being placed in a cast. Id. at 168, 510 S.E.2d at 696

 (citing Little v. Matthewson, 114 N.C. App. 562, 442 S.E.2d 567 (1994)).

¶ 79 In contrast, we held that a case involving the workmanship “utilized by

 professional engineers for environmental cleanup” was not the type of common-sense

 issue that could be determined by a jury alone. Id. Thus, given the lack of “required

 expert testimony to explain and prove the standard of care,” we held that the trial

 court did not err in granting the motion for directed verdict. Id.

¶ 80 The core of a workmanship claim is a claim that a professional failed to utilize

 “the customary standard of skill and care” in completing a project, based upon the

 particular industry, location, and timeframe in which the project occurred. See

 Kenney, 68 N.C. App. at 343, 315 S.E.2d at 314. And in most cases, the average juror

 would not have the requisite knowledge and experience to evaluate the prevailing
 DAN KING V. HARRISON

 2022-NCCOA-27

 Opinion of the Court

 professional standards in a particular industry and area.

¶ 81 As recognized by the “common knowledge” exception, there are certainly some

 types of workmanship claims that can routinely be determined by a jury without the

 aid of an expert. See Delta, 132 N.C. App. at 168, 510 S.E.2d at 696. These are

 matters where the workmanship is so grossly subpar that it is obvious to any

 layperson that the work does not live up to a professional standard of care—such as

 a surgeon “[leaving] a sponge in a patient’s body during surgery,” or a lawyer “who is

 ignorant of the applicable statute of limitations or who sits idly by and causes the

 client to lose the value of his claim.” Little, 114 N.C. App. at 569, 442 S.E.2d at 571.

¶ 82 This case is not like those cases. This case involved $16,324 worth of extensive

 plumbing work done throughout an entire home, encompassing removing and

 replacing all polybutylene piping with PEX piping “within reason.” An employee of

 the Company testified that “the scope of the work was massive.” Moreover, the

 contract expressly stated that the Company was under no obligation to repair or

 replace the drywall that would inevitably be cut open during the re-piping.

¶ 83 It is undisputed that Defendant did not offer any expert testimony to

 demonstrate that the plumbing work was not performed in a workmanlike manner.

 Instead, Defendant offered his own lay-testimony of why he believed the plumbing

 work was inadequate, and he introduced 12 photographs showing the allegedly

 inadequate piping and insulation work. We have examined these photographs, and
 DAN KING V. HARRISON

 2022-NCCOA-27

 Opinion of the Court

 we see no evidence that would indicate to a layperson that the plumbing work was

 obviously or grossly defective. Accordingly, as in Delta, we conclude that the common

 knowledge exception does not apply, and that expert testimony was required as a

 matter of law in order to prove Defendant’s workmanship claim against the Company.

 Because Defendant presented no expert testimony, we hold that the trial court erred

 in failing to grant the Company’s motion for directed verdict. We reverse and remand

 for a new trial on this claim.

¶ 84 As for Defendant’s remaining breach of contract claims—failure to provide the

 correct water heater called for in the contract, and charging a higher price than called

 for—we conclude sufficient evidence was presented to allow these claims to proceed

 to the jury. These claims were based in a standard breach of contract cause of action

 (as opposed to a workmanship claim) and thus did not require the presentation of

 expert testimony. Defendant presented competent testimonial evidence tending to

 show that a 40-gallon tank was installed instead of a 50-gallon tank, and that the

 price of the 7 November contract was higher than the price of the 2 November

 contract. While the Company presented contrary evidence, the evidence presented

 by Defendant on these claims was sufficient to allow those claims to proceed to the

 jury. We accordingly hold that the trial court did not err in refusing to grant a

 directed verdict on Defendant’s remaining breach of contract claims.

 D. Attorneys’ Fees
 DAN KING V. HARRISON

 2022-NCCOA-27

 Opinion of the Court

¶ 85 The Company next argues that the trial court erred in failing to allow the

 parties to be heard regarding the award of attorneys’ fees, and Defendant agrees.

 However, because neither party obtained a ruling on the request for attorneys’ fees,

 this issue has not been preserved for our review.

¶ 86 Our General Statutes provide as follows regarding the award of attorneys’ fees

 in a UDTP action:

 In any suit instituted by a person who alleges that the
 defendant violated G.S. 75-1.1, the presiding judge may, in
 his discretion, allow a reasonable attorney fee to the duly
 licensed attorney representing the prevailing party, such
 attorney fee to be taxed as part of the court costs and
 payable by the losing party, upon a finding by the presiding
 judge that:

 (1) The party charged with the violation has willfully
 engaged in the act or practice, and there was an
 unwarranted refusal by such party to fully resolve the
 matter which constitutes the basis of such suit; or

 (2) The party instituting the action knew, or should have
 known, the action was frivolous and malicious.

 N.C. Gen. Stat. § 75-16.1 (2019).

¶ 87 However, under Rule 10 of the North Carolina Rules of Appellate Procedure,

 “to preserve an issue for appellate review, a party must have presented to the trial

 court a timely request, objection, or motion, stating the specific grounds for the ruling

 the party desired the court to make if the specific grounds were not apparent from

 the context.” N.C. R. App. P. 10(a)(1). In addition, Rule 10 requires that “the
 DAN KING V. HARRISON

 2022-NCCOA-27

 Opinion of the Court

 complaining party [] obtain a ruling upon the party’s request, objection, or motion.”

 Id.

¶ 88 Here, though both Defendant and the Company had previously indicated on

 multiple occasions that they wished to be heard on attorneys’ fees, the trial court

 never held a hearing on attorneys’ fees, and never ruled on Defendant’s request for

 attorneys’ fees. This issue therefore has not been preserved for appellate review.

 E. Closing Arguments

¶ 89 Finally, the Company argues that the trial court erred when it implicitly

 disallowed the Company to make the final closing argument to the jury. We disagree,

 and hold that the trial court did not abuse its discretion in its ordering of the closing

 arguments in this case.

¶ 90 The basis of the Company’s argument is that the unique procedure posture of

 this case—in which the Company acted as both plaintiff and defendant—resulted in

 the Company not being able to make its final argument to the jury regarding its

 defense to Defendant’s counterclaims. The Company contends this resulted in unfair

 prejudice, as it left the jury with the false impression that the Company had no

 defense to Defendant’s UDTP and breach of contract claims.

¶ 91 The Company’s argument is based in Rule 10 of the General Rules of Practice

 for the Superior and District Courts. See N.C. Super. and Dist. Ct. R. 10 (2020). Rule

 10 provides, in pertinent part, as follows:
 DAN KING V. HARRISON

 2022-NCCOA-27

 Opinion of the Court

 In all cases, civil and criminal, if no evidence is introduced
 by the defendant, the right to open and close the argument
 to the jury shall belong to him. If a question arises as to
 whether the plaintiff or the defendant has the final
 argument to the jury, the court shall decide who is so
 entitled, and its decision shall be final.

 N.C. Super. and Dist. Ct. R. 10 (2020).

¶ 92 This Rule means that, generally, after the plaintiff introduces their evidence,

 and the defendant chooses to introduce no rebuttal evidence, then the defendant is

 entitled to be the final party to make arguments to the jury. Here, trial arguments

 proceeded in the following order: (1) the Company presented evidence on its breach

 of contract claims; (2) Defendant presented evidence on his breach of contract and

 UDTP counterclaims; (3) the Company made closing arguments on its breach of

 contract claims; and (4) Defendant made closing arguments on his breach of contract

 and UDTP counterclaims.

¶ 93 At the end of the Company’s initial closing, counsel for the Company indicated

 that he intended to “come back up and talk to” the jury one more time in order to put

 forth the Company’s rebuttal to Defendant’s counterclaims. Defendant’s counsel

 objected, asserting that the Company did not have the right to make a rebuttal

 argument, and that “anything he has [for closing], he says now.” The following

 exchange then occurred:

 [The Court]: Was that your closing, sir?
 DAN KING V. HARRISON

 2022-NCCOA-27

 Opinion of the Court

 [Counsel for the Company]: If I don’t get a rebuttal, I
 don’t get a rebuttal. That’s fine, Judge.

 [The Court]: All right.

 [Counsel for the Company]: I was under the
 presumption of a rebuttal, but okay.

¶ 94 Counsel for Defendant then proceeded to make his closing, and no further

 discussion occurred regarding the Company’s desire for a rebuttal.

¶ 95 This exchange demonstrates the Company did not adequately object to this

 issue to preserve it for appellate review, and arguably waived any challenge. To

 recapitulate, under Rule 10, to preserve an issue for appellate review, “a party must

 have presented to the trial court a timely request, objection, or motion, stating the

 specific grounds for the ruling the party desired the court to make.” N.C. R. App. P.

 10(a)(1). If a party fails to object to a certain ruling or action by the trial court, then

 the matter is deemed waived. See State v. Holliman, 155 N.C. App. 120, 123, 573

 S.E.2d 682, 685 (2002).

¶ 96 Here, it would strain credulity to conclude that the Company’s statements

 regarding the rebuttal argument amounted to an objection. When Defendant stated

 that the Company was not entitled to a rebuttal, the Company could have easily

 objected and asserted that it was, indeed, entitled to a rebuttal under Rule 10 of the

 General Rules of Practice. However, the Company did not make such an objection—

 instead, counsel stated “If I don’t get a rebuttal, I don’t get a rebuttal. That’s fine,
 DAN KING V. HARRISON

 2022-NCCOA-27

 Opinion of the Court

 Judge.” We hold that this did not qualify as an objection within the meaning of Rule

 10 of the Rules of Appellate Procedure, especially given that counsel did not “stat[e]

 the specific grounds for the ruling the party desired the court to make.” N.C. R. App.

 P. 10(a)(1).

 III. Conclusion

¶ 97 In sum, we hold as follows:

 (1) UDTP Claims: The trial court correctly concluded that Defendant’s

 UDTP claims must fail as to the superimposition of the signature (given

 that Defendant cannot show actual reliance on the 7 November

 contract), and as to the installation checklist (given that Defendant

 cannot show any injury associated with the checklist). However, the

 trial court erred in concluding that Defendant’s UDTP claim must fail

 as to the duplicate warranties, and we remand for further fact-finding

 as to the reasonableness of Defendant’s reliance on the contractual

 warranties.

 (2) Amendment of the Counterclaim: The trial court did not abuse its

 discretion in refusing to allow Defendant to amend his counterclaim

 during trial to add a new collections claim, because Defendant acted

 with undue delay.

 (3) Directed Verdict: The trial court erred as a matter of law in failing to
 DAN KING V. HARRISON

 2022-NCCOA-27

 Opinion of the Court

 grant the Company’s motion for directed verdict as to Defendant’s

 workmanship claim, as Defendant failed to present any supporting

 expert testimony as required under our precedent. As for Defendant’s

 remaining breach of contract claims, the trial court correctly refused to

 grant a directed verdict as sufficient supporting evidence had been

 presented.

 (4) Attorneys’ Fees: This issue has not been preserved for our review.

 (5) Closing Arguments: Defendant has not preserved this argument for

 appellate review, and in any event the trial court did not abuse its

 discretion in the ordering of closing arguments.

 AFFIRMED IN PART, REMANDED IN PART.

 Judge TYSON concurs.

 Judge MURPHY concurs in Parts I, II-A, II-B, II-D, II-E, and III; and concurs

in result only in Part II-C.